Lisa M. **AVAGLIANO**, et al., Plaintiffs,

v.

**SUMITOMO SHOJI AMERICA, INC.**, Defendant.

Palma **INCHERCHERA**, Plaintiff,

v.

**SUMITOMO CORP. OF AMERICA**, Defendant.

Nos. 77 Civ. 5641 (CHT), 82 Civ. 4930 (CHT).

United States District Court, S.D. New York.

Nov. 7, 1984.

564

Steel & Bellman, P.C., New York City, for plaintiffs Avagliano, et al. and Incherchera; Lewis M. Steel, Gina Novendstern, Richard F. Bellman, New York City, of counsel.

Wender, Murase & White, New York City, for defendant Sumitomo Corp. of America; Jiro Murase, Don T. Carmody, Peter J. Gartland, Lance Gotthoffer, Robert D. Piliero, New York City, of counsel.

## OPINION

TENNEY, District Judge.

These actions, which have been consolidated for the purposes of discovery, were brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1982) ("Title VII"), and under 42 U.S.C. § 1981 (1982) ("§ 1981").[1] Plaintiffs allege in both actions that the Sumitomo Corporation of America ("Sumitomo"), formerly Sumitomo Shoji America,[2] has a preference for the employment of male Japanese nationals in positions above the clerical level. They contend that Sumitomo's preferential employment practices constitute discriminatory treatment on the basis of sex and have a discriminatory impact on the basis of sex and national origin. In the motions before the Court, plaintiffs move under Federal Rule of Civil Procedure ("Rule") 23 for the certification in each action of a nationwide class consisting of all past, present and future female employees of Sumitomo.[3] Defendant opposes these motions, arguing

---

1. The complaints in both actions include allegations under § 1981. In *Avagliano,* however, the § 1981 claims have already been dismissed. 473 F.Supp. 506, 513–14 (S.D.N.Y.1979) (plaintiffs' allegations that they have been discriminated against on the basis of sex and national origin are insufficient to sustain a cause of action under § 1981).

 In 1983, the two actions were consolidated for discovery purposes without prejudice to the right of either party to move, after discovery, for consolidation for the purposes of trial. Order filed Mar. 28, 1983, 82 Civ. 4930 (CHT), 77 Civ. 5641 (CHT). The *Incherchera* action was filed when *Avagliano* was on appeal to the Supreme Court, during which time Palma Incherchera received her "right to sue" letter from the Equal Employment Opportunity Commission ("EEOC").

2. Sumitomo did business under the name of Sumitomo Shoji America from 1969 to 1978. For this reason, defendant is referred to by two different names in the captions of the cases under consideration here. For the purposes of this opinion, the name "Sumitomo" will be used

to refer to defendant during all time periods relevant to these actions.

3. In some of plaintiffs' initial papers, the proposed classes are described as including unsuccessful applicants for employment as well as employees. *See, e.g.,* Notice of Motion for Determination of Class Action, 77 Civ. 5641 (CHT), filed Feb. 14, 1983, at ¶ 2; Notice of Motion for Determination of Class Action, 82 Civ. 4930 (RWS), filed Sept. 27, 1982 ("*Incherchera* Notice of Motion"), at ¶ 2.

 However, in a later memorandum, prepared during the course of discovery before Magistrate Raby, *see* Memorandum of Plaintiffs Avagliano, et al. and Incherchera in Opposition to Motion to Compel Further Discovery, 77 Civ. 5641 (CHT), 82 Civ. 4930 (CHT), filed Mar. 2, 1983, at 24; *see also* Memorandum and Order of Mag. Raby, 77 Civ. 5641 (CHT), 82 Civ. 4930 (CHT), filed June 13, 1983, at 17, and in papers subsequently submitted on this motion, plaintiffs have stated that they seek certification of a "class consisting of all female employees of Sumitomo America, past, present and future." Plaintiffs' Reply Memorandum in Support of

that, at least after the Supreme Court's decision in *General Tel. Co. v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), the classes are improper as defined and the named plaintiffs are improper class representatives. Defendant's principal theory is that there must be a showing on these motions that both plaintiffs and the members of the classes they seek to represent are qualified for the positions from which they allege illegal exclusion. Employing this theory, defendant argues that the law regarding standing and the law regarding certification require that the Court deny plaintiffs' motions.

In the Discussion section below, the Court will first address defendant's argument on the law of standing. Then, turning to the law regarding class certification, the Court will address defendant's arguments under Rule 23 and, finally, plaintiffs' showing toward satisfaction of the Rule's requirements. In order to analyze the plaintiffs' showing, the Court will also discuss issues related to the scope of the classes, including whether they should contain future employees, how they will be affected by the statutes of limitations, and whether they should be nationwide.

For the reasons set out below, plaintiffs' motions pursuant to Rule 23 are granted in each case with respect to a nationwide class of all past and present female employees of Sumitomo, except as limited by the applicable statutes of limitations.

*Background*

Named plaintiffs are women who are or were employees in defendant's New York

City offices. Sumitomo is a wholly-owned subsidiary of a Japanese company, Sumitomo Corporation of Japan or Sumitomo Shoji Kaisha, Ltd. ("Sumitomo Kaisha"), which is one of Japan's largest trading companies.[4] Since 1952, Sumitomo has been incorporated under the laws of New York.

Sumitomo's employment practices are being challenged in two separate actions which are treated as one for the purpose of the analysis contained in this opinion.[5] The most recent of the two, *Incherchera v. Sumitomo Corp. of America,* which was filed in 1982, contains class claims under Title VII and § 1981 and alleges discrimination on the basis of sex, national origin and race. The other, *Avagliano v. Sumitomo Shoji America, Inc.,* which was filed in 1977, contains class claims alleging discrimination on the basis of sex and nationality. In 1981, pursuant to an interlocutory appeal, the Supreme Court granted certiorari in *Avagliano,* 454 U.S. 962, 102 S.Ct. 501, 70 L.Ed.2d 377 (1981), to consider whether the Friendship, Commerce and Navigation Treaty between the United States and Japan provides a defense to a Title VII suit against an American subsidiary of a Japanese company. The Court found that Sumitomo had no defense under the Treaty since Sumitomo is a company of the United States and the exemption under the Treaty is not available to companies of the United States. 457 U.S. 176, 189, 102 S.Ct. 2374, 2382, 72 L.Ed.2d 765 (1982). Plaintiffs in both *Avagliano* and *Incherchera* have now moved for class certification.[*]

Motions for Class Certification, 77 Civ. 5641 (CHT), 82 Civ. 4930 (CHT), filed Sept. 30, 1983 ("Reply Memo."), at 22. The Court will address plaintiffs' motions in light of their more recent definition of the classes proposed for certification on the theory that it supersedes the earlier proposals.

Thus, the Court does not reach the question of whether these would be appropriate cases in which to certify classes consisting of both applicants and employees. *Cf. Falcon,* 457 U.S. at 159 n. 15, 102 S.Ct. at 2371 n. 15 ("Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employ-

ees...."); *Meyer v. Macmillan Publishing Co.,* 95 F.R.D. 411, 414–15 (S.D.N.Y.1982); *see infra* note 18.

**4.** See *Sumitomo Shoji America, Inc. v. Avagliano,* 457 U.S. 176, 178 n. 1, 102 S.Ct. 2374, 2376 n. 1, 72 L.Ed.2d 765 (1982), for a concise description of the role played by trading companies in the Japanese economy.

**5.** Regarding the extent to which these actions have in fact been consolidated, see *supra* note 1.

[*] Three classes are at issue here—two Title VII classes and one § 1981 class. For simplicity,

Sumitomo Kaisha is a multinational integrated trading company engaged in trading thousands of different products. It has more than thirty offices in Japan and maintains overseas offices (including branches, subsidiaries and affiliates) in eighty-one countries. Like its counterparts in other countries, Sumitomo, the United States subsidiary, does not produce any of the merchandise traded, nor does it purchase for its own use. As a rule, its purchases are made pursuant to a third party's commitment to purchase the goods from Sumitomo. Sumitomo acts as a principal in these transactions rather than as an agent or broker. In addition to arranging for the sales themselves, Sumitomo provides related services and functions, such as extending financing, arranging for transportation, reviewing compliance with import and export documentation requirements, assuming the risk of currency fluctuation, procuring appropriate insurance, and in general performing or arranging for the performance of those activities needed to bring a transaction from conception to completion. Central to the operation of the trading companies are the traders themselves. They are responsible for managing the sales transactions and providing ancillary services for these transactions.

Sumitomo has its headquarters in New York City and maintains offices in twelve other cities in the United States. Defendant has stated in interrogatories that at the end of 1977 it employed approximately 464 people nationwide. The lion's share of Sumitomo's employees worked in its New York City offices—209 in the national headquarters and 21 in another New York City office. In its branch offices elsewhere in the United States, Sumitomo employed staffs ranging in size from 2 to 23 employees.

From the record, it appears that the organizational structure of Sumitomo is at its most complex in its New York City offices. The organization charts submitted to the

Court do not indicate any subdivisions within the company's branch offices. The New York staff, however, is divided into a Business Division and a Corporate Division. The Business Division is subdivided into three Business Divisions and a Petroleum & Carbon Division. The three Business Divisions are then divided into eighteen departments handling different products (e.g., Rolled Steel, Plastics). The Corporate Division is subdivided into the Administration, Corporate Planning, and Treasury & Accounting Divisions. The Administration Division is subdivided into seven departments, including Personnel, General Affairs, and Credit. The Treasury & Accounting Division is subdivided into three departments. See Affidavit of Yoshiyuki Kamijima in Opposition to Class Certification Motions, sworn to Aug. 19, 1983, filed Aug. 22, 1983, ¶ 7 & Exh. 1.

As of the end of 1977, Sumitomo used twenty-one different job titles. According to Sumitomo, these titles may be grouped into three categories: (1) positions which are either "Executive" or "Managerial and Supervisory," namely, general manager, assistant general manager, and department manager; (2) positions which are "Managerial and Supervisory," namely, sub-branch manager, manager, assistant manager, assistant to the general manager, administrator, senior clerk, and senior secretary; and (3) positions which are classified as "Others," namely, clerk, secretary, business machine operator, maintenance, guard, chauffeur, messenger, receptionist, telex machine operator, and salesperson.[6] See Defendant's Answers to Plaintiffs' Interrogatories ("Defendant's Answers"), Exh. B to *Incherchera* Notice of Motion, no. 7 at 4–5; no. 10 at 6–7.

The basis on which employees are selected to fill certain of these job titles is one of the issues in these actions. The record establishes a number of relevant facts. First, Sumitomo maintains no job descrip-

the term "class" will sometimes be used to refer to all three.

6. It is not clear to the Court which job title is held by traders, although there is some suggestion in the record that traders hold the title of salesperson. See Reply Memo., at 5 n. 4.

tions for any of the twenty-one job titles in the company. *See* Defendant's Answers, no. 8 at 5–6; Defendant's Supplemental Answers and Objections to Plaintiffs' Interrogatories, filed Jan. 31, 1983 ("Defendant's Supplemental Answers"), no. 13 at 1–3. Further, defendant states that, at least between 1974 and 1977, those Japanese nationals occupying executive, managerial and sales positions were assigned to those posts by Sumitomo's Japanese parent, Sumitomo Kaisha. Addressing both issues, defendant asserts that, with respect to those few executive, managerial and sales positions which are filled by Sumitomo directly, it "does not have or utilize any generally applicable written criteria, but instead fills such positions based on the particular requirements of each position," and that "[t]he most important criterion is relevant prior experience." *Id.* at 3.

Sumitomo refers to personnel assigned from Japan by Sumitomo Kaisha as "rotating staff" and to local employees as "non-rotating staff." The evidence indicates that the rotating staff is divided into two categories—those called employees "with titles," and those called "general" employees. Plaintiffs have indicated that they will contend on the merits that even if a business necessity defense could be established as to relatively high echelon posi-

tions at Sumitomo, there could be no business necessity defense for positions filled by Japanese nationals listed as general employees.

Based on documentation produced by defendant, it appears that the rotating staff at Sumitomo's New York offices comprised between 40% and 45% of the entire New York staff during the years 1975 through 1982. During the same period, rotating staff members with titles comprised between 25% and 33% of the New York staff. As of February 1976, the only date for which parallel data is available to the Court for Sumitomo's offices nationwide, rotating staff comprised 41% of all Sumitomo's 432 employees in the United States, while the rotating staff with titles comprised 24%.[7] Although documentation produced by defendant indicates the number of females in the non-rotating, or local, staff, there is no such breakdown for the rotating staff. Plaintiffs assert that the absence of such a breakdown indicates the absence of females in the rotating staff.

The thirteen plaintiffs in these actions are or were clerical employees at Sumitomo's New York offices. All of them have graduated from high school, and nine of them have had a year or more of college.

---

7. These calculations are based on the data provided in Exhs. I through N to Affidavit of Lewis M. Steel in Support of Class Certification Motions, sworn to Sept. 29, 1983, filed Sept. 30, 1983 ("Steel Aff.").

These exhibits afford the following information regarding the employees in the New York offices of Sumitomo as of the end of February of each year listed:

### Employees in All New York Offices/Stores

| Year | TOTAL | (i) Rotating Employees | | (ii) Rotating Employees with Titles | |
|------|-------|------------------------|------------|------------------|------------|
| | | Number | % of TOTAL | Number | % of TOTAL |
| 1975 | 188 | 85 | 45% | 46 | 25% |
| 1976 | 210 | 89 | 42% | 53 | 25% |
| 1977 | 231 | 96 | 42% | 61 | 26% |
| 1980 | 221 | 97 | 44% | 68 | 31% |
| 1981 | 241 | 99 | 41% | 75 | 31% |
| 1982 | 227 | 102 | 45% | 77 | 34% |

Note: There is no comparable information in the record for the years 1978 and 1979.

---

See Affidavit of Translation of Yasko Karaki, sworn to Sept. 26, 1983, Exh. O to Steel Aff., regarding the translation of Exhs. I through N from Japanese into English.

At least four have bachelor's degrees.[8] Plaintiffs have submitted evidence on this motion that three of the named plaintiffs have received at least one very favorable work-evaluation at Sumitomo,[9] and that five of these plaintiffs have indicated to Sumitomo that they wish to advance beyond the clerical level within the corporation.[10]

## Discussion

In opposing plaintiffs' motions for class certification, defendant advances a single basic theory in several different forms. Whether cast as an argument on standing or on Rule 23, the theory runs essentially as follows. In order to be certifiable under Rule 23, a class must consist of and be represented by persons who have made a showing that they are qualified for the positions from which they claim to have been illegally excluded.[11] At Sumitomo a solid background and work experience in the relevant field of trade as well as a knowledge of Japanese customs and language are virtual necessities for executive, managerial and sales positions. Plaintiffs have not made a showing that they possess the qualifications that Sumitomo. requires for persons holding these positions; nor have the proposed classes been defined so as to exclude unqualified persons. Hence, plaintiffs are improper class representatives, and the proposed class is improperly defined and should not be certified. Plaintiffs' principal argument in reply is that a showing of individual qualification, beyond that provided with regard to the class representatives, is properly a showing on the merits, and is not required on a motion for certification. By the same token, they argue that at least under the factual circum-

stances of these actions, the classes themselves need not be defined to exclude unqualified persons; rather, whether individual class members are qualified will be an issue on the merits at a later stage in the litigation.[12]

The Court agrees with plaintiffs that defendant's basic theory, and the various arguments against certification fashioned on this theory, must be rejected.

STANDING

Employing the basic theory summarized above, here cast in the form of an argument against standing, defendant contends that to have standing to bring this action, a plaintiff must make a showing that she was qualified for the positions from which she claims illegal exclusion. By the same token, defendant contends that the class must by definition be limited to persons who could make such a showing. According to Sumitomo, this showing is necessary in order to establish that the plaintiffs and the class were sufficiently aggrieved by the challenged conduct to have standing under Article III of the United States Constitution. Defendant's argument is rejected for the reasons set out below.

■ The standing requirement has roots in both the constitutional "case" or "controversy" requirement and in prudential considerations. *See Secretary of State v. Joseph H. Munson Co.,* —— U.S. ——, ——, 104 S.Ct. 2839, 2845, 81 L.Ed.2d 786 (1984). To determine whether constitutional standing exists, it is necessary to consider "(1) whether [the plaintiffs] allege that they have suffered an 'injury in fact' and (2) 'whether the interest sought to be protected by the complainant[s] is arguably

---

**8.** *See* Exhs. 1 through 13 to Affidavit of Koji Okamoto in Opposition to Class Certification Motions, sworn to Aug. 19, 1983, filed Aug. 22, 1983.

**9.** *See* Exhs. Y, AA, BB to Steel Aff.

**10.** *See* Exhs. Z, CC, DD, FF, GG, HH to Steel Aff.

**11.** Defendant asserts that the showing required under its theory would be a lesser showing than that required for a prima facie case.

**12.** Plaintiffs argue further that while there may, as the Supreme Court noted, 457 U.S. at 189 n. 19, 102 S.Ct. at 2382 n. 19, be some positions for which there is a business necessity defense— that is, for example, the defense ·that the skills possessed by Japanese nationals are necessary to some or all of the positions they occupy at Sumitomo—this possibility is not relevant on this motion.

within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question.'" *Doe v. Blum,* 729 F.2d 186, 189 (2d Cir.1984) (quoting *Association of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 152–53, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970)). As the Supreme Court described the constitutional component of the standing requirement, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright,* —— U.S. ——, ——, 104 S.Ct. 3315, 3325, 82 L.Ed.2d 556 (1984) (citation omitted). Prudential concerns, the second component of the standing requirement, dictate that a "'plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Munson,* —— U.S. at ——, 104 S.Ct. at 2846 (quoting *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)).

■ The standing requirement applies, of course, with equal force where a class action is at issue, and "the named plaintiffs 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" *Doe v. Blum,* 729 F.2d at 190 n. 4 (quoting *Warth v. Seldin,* 422 U.S. at 502, 95 S.Ct. at 2207); *see* 2 A. Larson & L. Larson, *Employment Discrimination* §§ 49.51(a)(i) (1983 & June 1984 Supp.) (hereinafter cited as "Larson"); *cf. id.* at § 49.51(a)(ii), (iii).

■ In applying the tests for standing, it is critical to note, as defendant here fails to do, that it is the nature of the injury *asserted* that is relevant to the determination of whether plaintiffs have shown the requisite personal stake and concrete adverseness. *See* 13 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3531, at 68 (Cum.Supp.1980) (discussing *Davis v. Passman,* 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)); *cf.* 1 *Newberg on Class Actions* § 1065c (1978 & Cum.Supp. 1980 & Supp.1984). In other words, the standing inquiry is not an inquiry on the merits.

■ Here, plaintiffs assert that although they and the class they seek to represent were qualified for positions above the clerical level they were not offered those positions because of discrimination based on gender, race and national origin. The personal injury alleged—denial of employment on the basis of discrimination—is fairly traceable to defendant's allegedly unlawful conduct—employment policies and practices under which preference is given to male Japanese nationals. Defendant does not show that plaintiffs were incapable of promotion by reason of some rule or requirement which is unchallenged in this litigation. *Compare East Tex. Motor Freight Sys. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) (named plaintiffs were unqualified for line-driver positions, but did not challenge the job requirements in their action; they could not represent a class of persons allegedly qualified for the line-driver positions). Indeed, defendant here does not even contend that plaintiffs were unqualified for all of Sumitomo's job titles above the clerical level. Defendant nevertheless does contend that certain of its executive, managerial and sales positions from which plaintiffs allege they have been excluded are necessarily defined in such a way that plaintiffs could not possibly qualify for them. Since plaintiffs are challenging, inter alia, the qualifications required, and since plaintiffs allege that they have been illegally excluded from all positions above the clerical level, defendant's contention is unpersuasive. Defendant cannot foreclose an inquiry on the merits by raising this issue at this juncture. The time to do so is at the trial on the merits. Further, defendant does little, if anything, to meet plaintiffs' argument that, even assuming that the class representatives and members of the class lack the qualifications for certain job titles

above the clerical level, they possess the qualifications for others.[13]

Of the cases defendant cites to support its argument on standing, only two warrant treatment here; the others cited, which are properly Rule 23 cases, will be treated below as part of the Rule 23 analysis. In *Howard v. New Jersey Dep't of Civil Serv.*, 667 F.2d 1099 (3d Cir.1981), plaintiffs, who were female job applicants for civil service positions, challenged as sexually discriminatory defendant's use of a physical agility test in screening candidates for employment. Plaintiffs had, however, also failed a written examination administered by defendant, and therefore would not have been eligible for employment even if the challenged agility test were abolished. The court concluded that plaintiffs lacked standing because the conduct they challenged (the use of the physical agility test) was not causally connected to the injury they alleged (loss of job opportunity). *Id.* at 1102. In the instant cases, as indicated above, the conduct challenged (a policy and practice of preferring Japanese nationals for non-clerical positions and of restricting women and non-Japanese nationals to the clerical level without regard to their qualifications) has a direct and causal relation to the injury alleged (loss of job opportunity). Here, it is the restriction of women and non-Japanese nationals to clerical positions on the basis of gender, race and national origin that caused plaintiffs' alleged injury.

In *Doherty v. Rutgers School of Law— Newark*, 651 F.2d 893 (3d Cir.1981), plaintiff, who had been denied admission to defendant law school, challenged one segment of the school's admissions procedures, known as the Minority Student Admissions Program ("MSP"). The court rea-soned that since plaintiff did not possess the qualifications required for admission, he could not show that his alleged injury (rejection from law school) would be remedied by elimination of the challenged procedure under which others were admitted. Therefore, the court found he lacked standing to challenge the MSP. *Id.* at 899–900. The plaintiff in *Doherty* and the plaintiffs in *Howard* challenged a single aspect of a selection process even though another aspect, not challenged as illegal, would have prevented them from being selected even if the challenged procedure were eliminated.

This Court expresses no view regarding the merit of the third circuit's standing analysis in *Doherty* and *Howard*. Since both cases are, in any event, distinguishable from those at bar, it is unnecessary to reach this issue.[14] Here, plaintiffs and the classes they seek to represent make a colorable challenge to the employee selection system as a whole, alleging that the process in its entirety is illegally discriminatory. They allege that it is this broad policy and practice—rather than a single factor among many—that illegally discriminates against them and the proposed classes.

There is no question in this case that plaintiffs have established that they have the requisite personal stake in the outcome of this litigation and that there is a causal connection between the conduct challenged and the injury alleged.[15] Thus, they have standing to bring these actions, and by the same token their motions for class certification cannot be denied for failure to meet standing requirements.

## CLASS CERTIFICATION

Rule 23(a) provides that an action may be brought on behalf of a class only if the

---

**13.** *See supra* note 12.

**14.** On this issue, see generally, *Regents of the Univ. of Cal. v. Bakke*, 438 U.S. 265, 280 n. 14, 98 S.Ct. 2733, 2743 n. 14, 57 L.Ed.2d 750 (1978) ("[E]ven if Bakke had been unable to prove that he would have been admitted in the absence of the special program [challenged in his action], it would not follow that he lacked standing.").

**15.** As for the zone-of-interests factor, to the extent that it is still a viable component of the standing inquiry, *see Doe v. Blum*, 729 F.2d at 189 n. 3, the interests plaintiffs seek to protect— the interests in freedom from discrimination in the workplace on the basis of gender, national origin and race—are within the dual zones protected and regulated by Title VII and § 1981 under which these actions are brought, and defendant does not contend otherwise.

following prerequisites are met: (1) the class is so numerous that joinder of all members is impracticable, (2) the class has questions of law or fact in common, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Rule 23(b)(2), under which plaintiffs seek to have this action certified, provides that, where the prerequisites of Rule 23(a) have been satisfied, a class action may be maintained if the party opposing the class has acted or refused to act on grounds generally applicable to the class as a whole.

■ The Supreme Court has recently stressed that "a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982).[16] In *Falcon*, the Court also reiterated the well-recognized precept that " 'the class determination generally involves considerations that are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action." ' " *Id.* at 160, 102 S.Ct. at 2372 (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978) (quoting *Mercantile Nat'l Bank v. Langdeau*, 371 U.S. 555, 558, 83 S.Ct. 520, 522, 9 L.Ed.2d 523 (1963))). Nevertheless, it is clear that "[a] motion for class certification is not the occasion for a mini-hearing on the merits." *Meyer v. Macmillan Publishing Co.*, 95 F.R.D. 411, 413 (S.D.N.Y.1982) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974)); *see Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir.1983) ("Although some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a), it is improper

to advance a decision on the merits to the class certification stage." (citing *Eisen*, 417 U.S. at 177–78, 94 S.Ct. at 2152)); *Anderson v. City of Albuquerque*, 690 F.2d 796, 799 (10th Cir.1982). Thus, in considering a class certification motion, a court should look to the merits only so far as is necessary to permit a full and searching inquiry as to whether the requirements of Rule 23 have been met.

■ Furthermore, as the second circuit has recently emphasized, "[i]t is often proper ... for a district court to view a class action liberally in the early stages of litigation, since the class can always be modified or subdivided as issues are refined for trial." *Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir.1984); *see* Rule 23(c)(1) ("[a]n order under this subdivision may be conditional, and may be altered or amended before the decision on the merits."); Rule 23(c)(4)(B) ("a class may be divided into subclasses and each subclass treated as a class ...."). Indeed, the *Falcon* Court concluded its analysis by pointing out that

> Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation. For such an order, particularly during the period before any notice is sent to members of the class, "is inherently tentative." 437 U.S., at 469, n. 11 [98 S.Ct. at 2458 n. 11]. This flexibility enhances the usefulness of the class-action device ....

457 U.S. at 160, 102 S.Ct. at 2372 (footnotes omitted). In the same breath, however, the *Falcon* Court stressed that "actual, not presumed, conformance with Rule 23(a) remains indispensable," *id.*, and it is in this light that the Court now examines plaintiffs' evidence and defendant's arguments against certification.

As noted above, the crux of these arguments against certification is that named plaintiffs have failed to make a showing that they possess the requisite qualifications for the jobs from which they claim

---

**16.** The trial court has broad discretion to determine whether an action should be maintained as a class action. *See Society for Good Will to*

*Retarded Children, Inc. v. Cuomo*, 737 F.2d 1239, 1243 (2d Cir.1984); *Becker v. Schenley Indus., Inc.*, 557 F.2d 346, 348 (2d Cir.1977).

574

they have been illegally excluded. Defendant argues that pursuant to the *Falcon* decision and one of its precursors, *East Tex. Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), the class which plaintiffs seek to represent is improper, and that a proper class under Rule 23 would be "a class of female employees of Sumitomo qualified for promotion to management and trader positions." Supplemental Memorandum of Sumitomo Corporation of America in Opposition to Class Certification, 77 Civ. 5641 (CHT), 82 Civ. 4930 (CHT), filed Oct. 20, 1983, at 3. Defendant further argues that in order to make a sufficient showing that they would adequately represent a properly defined class, plaintiffs must also make a showing that they have the requisite qualifications for promotion to management and trader positions. This, defendant argues, plaintiffs have failed to do.

As will be discussed below, the Court rejects the defendant's interpretation of the *Falcon* decision to require a showing of qualification at the certification stage. However, viewing defendant's argument first in the context of the Rule 23 case law set out above, it is important to recognize that defendant's theory incorporates a merits inquiry in the class certification analysis. In addition to the fact that this result is contrary to well-established principles regarding the certification of class actions, it overlooks the fact that the flexibility of the class certification device and the practice of defining sub-classes and of decertifying existing classes are both intended to accommodate the products of discovery and the trial process. As information is developed which indicates that an erroneously broad class has been designated, the class can and should be redefined accordingly. To ask that the class itself be defined very narrowly at this juncture also ignores the fact that the class action is an efficient tool which "saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economic fashion." *Califano v. Yamasaki*, 442 U.S.

682, 701, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (1979).

 Plaintiffs have raised an inference of discrimination. While they may have made a greater showing than is required on a motion for certification, certainly no *more* than an inference need be shown. *See Gilchrist v. Bolger*, 89 F.R.D. 402, 405–06 (S.D.Ga.1981), *aff'd in part and rev'd in part on other grounds*, 733 F.2d 1551 (11th Cir.1984). The decision in *Grant v. Morgan Guar. Trust Co. of New York*, 548 F.Supp. 1189 (S.D.N.Y.1982), on which defendant relies, is not to the contrary. *Grant* merely indicates in dictum that a showing on the merits could have helped plaintiffs' certification motion where there was insufficient evidence that a class of aggrieved persons existed. *Id.* at 1193 & n. 8. It lends no support to the theory that plaintiffs must show that they and the class they seek to represent possess qualifications for specific jobs in order to proceed as a class where they can otherwise satisfy the requirements of Rule 23.

An argument similar to the one defendant now raises was addressed, and rejected in *Lawler v. Alexander*, 698 F.2d 439 (11th Cir.1983). There, the court of appeals reversed the lower court's restriction of the plaintiffs' class to applicants who were considered qualified by the defendant. The court noted that such a limitation would deprive plaintiffs of the opportunity to pursue their allegations that a broad policy of discrimination existed which policy could itself affect the initial determination of who was qualified. *Id.* at 441–42. The approach taken by the *Lawler* court is appropriate here where plaintiffs present factual allegations regarding the existence of a broad policy of discrimination.

There is another serious flaw in defendant's reasoning: it would require plaintiffs to make a showing that they satisfy defendant's employment standards, before proceeding to the merits of their actions even though plaintiffs are challenging, inter alia, those very standards on the ground that they illegally discriminate against them. In other words, defendant's

theory would trap plaintiffs in a Catch-22 situation. This illogic has been rejected by other courts considering the merits of disparate impact claims and is rejected here. *See Jones v. International Paper Co.*, 720 F.2d 496, 500 (8th Cir.1983); *Hung Ping Wang v. Hoffman*, 694 F.2d 1146, 1148 (9th Cir.1982).

*The Falcon and Rodriguez Decisions*

The decisions in *Falcon* and *Rodriguez* address two, essentially parallel questions regarding the relationship which must exist between a proposed class and its class representatives. *Falcon* examines the typicality and commonality requirements under Rule 23(a)(2) and Rule 23(a)(3). *Rodriguez* addresses the requirement under Rule 23(a)(4) that the class representative(s) provide adequate representation of the class members' claims. Both are employment discrimination suits in which the Court found that a class had been improperly certified below. Neither case, however, stands for the proposition advanced by defendant here, namely, that prior to certification of a class there must be a showing of qualification for the positions from which illegal exclusion is alleged notwithstanding the fact that the qualifications for the positions are themselves challenged in the plaintiffs' action.

In *Rodriguez*, three Mexican-Americans employed as city-drivers by defendant common carrier challenged two of defendant's employment practices. They challenged the company's no-transfer rule under which drivers were prohibited from transferring between city-driver and line-driver jobs, and the competitive seniority system under which competitive seniority runs only from the date an employee enters a particular bargaining unit. The plaintiffs sought to represent a class including city-drivers and applicants for line-driver positions, and alleged that the above practices were illegal because they discriminated on the basis of race and national origin. Plaintiffs did not challenge the qualifications required for the position of line-driver, and did not move for class certification prior to trial. The district court denied class certification after the trial, upheld the challenged practices, and determined that plaintiffs had failed to make a showing that they were qualified for the line-driver positions. The court of appeals reversed and certified the proposed class. In addition, the appellate court found in plaintiffs' favor on the merits and deemed the ruling regarding the plaintiffs' lack of qualifications to have been premature.

The Supreme Court reversed on the ground that "it was evident by the time the case reached [the court of appeals] that the named plaintiffs were not proper class representatives under Fed.Rule Civ.Proc. 23(a)." 431 U.S. at 403, 97 S.Ct. at 1896 (footnote omitted); *see Falcon*, 457 U.S. at 156, 102 S.Ct. at 2370. The Court found that, since it had been shown at trial that plaintiffs lacked the qualifications for the line-driver position, it had thereby been shown that the transfer and seniority policies they challenged could not have been responsible for their exclusion from those positions; plaintiffs therefore could not represent a class of persons alleging injury caused by those two policies.

In considering defendant's contention here, it must be noted that in *Rodriguez* the Court did not state either (1) that the class as defined was improper, or (2) that on a motion for certification named plaintiffs must make a showing of qualification for the positions from which they allege illegal exclusion, or even (3) that named plaintiffs must make a showing on the certification motion that they possess all requisite qualifications *except* those they are challenging as discriminatory. The Court did, however, state that *where it appears from the record* that the class representatives are, because of job requirements unrelated to the policies they are challenging,[17] ineligible for the positions from

---

17. As the court observed in *Howard v. New Jersey Dep't of Civil Serv.*, "[t]he plaintiffs [in *Rodriguez*] ... did not meet other, *admittedly non-discriminatory*, requirements for the line-driver job." 667 F.2d at 1102 (emphasis added).

which they allege illegal exclusion, they are also ineligible to act as representatives of the proposed class. The Court made careful note of the significance of the *posture* of the case when the certification motion was considered. Since, the Court said, the trial court had considered the certification motion after a trial on the merits, the review of the motion on appeal must also consider the record developed at trial. 431 U.S. at 406 n. 12, 97 S.Ct. at 1898 n. 12. "Obviously," the Court stated, "a different case would be presented if the District Court had certified a class and only later had it appeared that the named plaintiffs were not class members or were otherwise inappropriate class representatives." *Id.*[18]

The record in the present case does not show that named plaintiffs cannot qualify for *any* positions at Sumitomo above the clerical level. Further, defendant's attempt to show that named plaintiffs are unqualified for promotion beyond the clerical level is based in large part on the application of selection criteria which plaintiffs are challenging, inter alia, as discriminatory. Under either of these circumstances, *Rodriguez* is inapposite, and certainly does not prevent certification of the proposed class as represented by plaintiffs.

The holding in *Rodriguez* has been termed "limited" by the *Falcon* Court, 457 U.S. at 156, 102 S.Ct. at 2370; *Rodriguez* identifies an exception that proves the rule. The rule remains that the failure to make a substantial showing of qualification for those positions from which discriminatory exclusion is alleged is neither significant nor relevant on a class certification motion—especially where a broad policy of discrimination is alleged. The question of qualification for employment is a question going to the merits, and is properly addressed at a trial of the merits.

In *Falcon*, the other major case on which defendant relies in opposing these motions, the issue was whether the claims of the class representative—a single claimant— were sufficiently typical of the claims of the class members to support the district court's decision to certify a class. There, the district court certified a class consisting of both employees and applicants who had not been hired, even though the named plaintiff complained of discrimination in policies affecting only employees, and did not include any factual allegations in his complaint regarding the defendant's hiring practices and policies affecting applicants. 457 U.S. at 150, 102 S.Ct. at 2367. The district court certified the proposed class without conducting an evidentiary hearing, and denied motions to decertify the class both before and after the trial. *Id.* at 152 & n. 5, 102 S.Ct. at 2368 & n. 5. The essence of the Court's holding that certification of the class had been improper is contained in its statement that "[w]ithout any specific presentation identifying the questions of law or fact that were common to the claims of respondent and of the members of the class he sought to represent, it was error for the District Court to *presume* that respondent's claim was typical of other claims against petitioner by Mexican-American employees and applicants." *Id.* at 158–59, 102 S.Ct. at 2371 (footnote omitted) (emphasis added). The Court elsewhere reiterated, "The *mere fact* that an aggrieved private plaintiff is a member of an identifiable class of persons of the same race or national origin is insufficient to establish his standing to litigate on their behalf *all possible claims* of discrimination against a common employer." *Id.* at 159 n. 15, 102 S.Ct. at 2371 n. 15 (emphasis added). Summarizing its ruling in *Falcon*, the Court recently stated, "*Falcon* thus holds that the existence of a valid individual claim does not necessarily warrant the conclusion that the individual plaintiff may successfully maintain a class action." *Cooper v. Federal Reserve Bank*, — U.S. —, —, 104 S.Ct. 2794, 2801, 81 L.Ed.2d 718 (1984).

---

**18.** The Court notes that the certification of an "across-the-board" class was subsequently deemed appropriate by a court in this circuit. *See Rosario v. New York Times Co.*, 84 F.R.D. 626, 628–30 (S.D.N.Y.1979) (court follows "across-the-board" approach and denies motion to modify class of applicants and employees so as to exclude unsuccessful applicants).

Thus, it is clear that the decision in *Falcon* does not have the effect ascribed to it by defendant, and does not affect these motions in the manner defendant describes in its arguments against certification. First, unlike the plaintiff in *Falcon*, plaintiffs here do not seek to represent applicants for employment who were never hired by defendant. Second, and more important, plaintiffs have fully satisfied the basic mandate of the *Falcon* decision, namely, that there be a "specific presentation identifying the questions of law or fact that [are] common to the claims of [plaintiffs] and of the members of the class [they seek] to represent." *Id.*, 457 U.S. at 158, 102 S.Ct. at 2371 (footnote omitted). Thus, this Court need not and does not presume plaintiffs' satisfaction of Rule 23's requirements.

This Court is, furthermore, mindful of the urging of the court of appeals in this circuit that classes should not be certified without careful attention to the propriety of allowing the named plaintiffs to litigate the interests of others. *See Smith v. Schweiker*, 709 F.2d 777, 781 (2d Cir.1983); *Mercer v. Birchman*, 700 F.2d 828, 835 (2d Cir.1983). In light of these authorities, the Court turns now to the merits of plaintiffs' motions.

### Scope of the Class
#### Future Employees

■ Plaintiffs' proposal to include future female employees in the class is denied on the ground that no benefits can accrue to such future employees other than those which would accrue to them absent class membership. *See Thompson v. American Chain & Cable Co.*, 84 F.R.D. 406, 407–08 (D.Conn.1979); *Kuck v. Berkey Photo, Inc.*, 81 F.R.D. 736, 739 (S.D.N.Y. 1979); *Williams v. Wallace Silversmiths, Inc.*, 75 F.R.D. 633, 636 (D.Conn.1976), *appeal dismissed*, 566 F.2d 364 (2d Cir.1977); *Timpano v. East Ramapo Cent. School Dist.*, 20 F.E.P. 652, 653 (S.D.N.Y.1979).

As stated in *Wallace Silversmiths, Inc.*, "[a]ny ... injunctive relief that may be entered will redound to the benefit of these persons in any event, but certainly no monetary relief can be awarded to them for discrimination not yet inflicted." 75 F.R.D. at 636. These concerns have practical significance since, if future employees are included in the present class, they may find themselves bound by the judgments in these actions—even though, because they do not now have the characteristics of a class member, they cannot participate in the litigation. *See Harvey v. Stein Printing Co.*, 9 F.E.P. 88, 88 (N.D.Ga.1973); 2 Larson § 49.58, at 9B–166.60 to –166.63; *but see Wajda v. Penn Mut. Life Ins. Co.*, 80 F.R.D. 303, 313 (E.D.Pa.1978) (there is no reason why future employees who had been class members would be barred from subsequent suit alleging discrimination occurring after the judgment). Therefore, the class certified will be limited to past and present employees.

### Statute of Limitations

The statute of limitations for Title VII claims differs from that applicable to § 1981 claims. Therefore, the statute of limitations for each cause of action will be applied separately in the manner discussed below. *See Payne v. Travenol Laboratories, Inc.*, 673 F.2d 798, 814–15, 830 (5th Cir.1982), *rehearing denied*, 683 F.2d 417 (5th Cir.1982), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982).

#### (i) Title VII Claims

■ While plaintiffs may assert Title VII class claims on behalf of persons within the class who have not filed charges with the EEOC,[19] they may not represent those who could not have filed charges during the applicable limitation period, and the class must therefore be defined to exclude such persons. *See Gill v. Monroe County Dep't of Social Servs.*, 79 F.R.D. at 331; *Carter v. Newsday, Inc.*, 76 F.R.D. 9, 15 (E.D.N.Y.1976). In a so-called "defer-

---

**19.** *See Sobel v. Yeshiva Univ.*, 477 F.Supp. 1161, 1170 (S.D.N.Y.1979); *Gill v. Monroe County Dep't of Social Servs.*, 79 F.R.D. 316, 331 (W.D. N.Y.1978), *motion to decertify denied*, 95 F.R.D. 518 (W.D.N.Y.1982); 2 Larson § 49.55(a), at 9B–166.24.

ral state" such as New York, a Title VII claimant has 300 days from the date of the act complained of in which to file an administrative charge with the EEOC. *See* 42 U.S.C. § 2000e–5(e) (1982); *Collins v. Manufacturers Hanover Trust Co.,* 542 F.Supp.' 663, 667–69 (S.D.N.Y.1982). In a class action, the class can include only those persons who could have filed a timely claim at the earliest date that any class representative filed a claim. *See Travenol Laboratories, Inc.,* 673 F.2d at 813 (citing cases). In other words, only those persons who are challenging acts which occurred within 300 days prior to this first filing may be considered members of the class. *See Gill,* 79 F.R.D. at 331. However, under the "continuing violation" theory, "a 'continuously maintained illegal employment policy may be the subject of a valid complaint until a specified number of days after the *last occurrence* of an instance of that policy.'" *EEOC v. Sage Realty Corp.,* 87 F.R.D. 365, 370 (S.D.N.Y.1980) (quoting *Acha v. Beame,* 570 F.2d 57, 65 (2d Cir.1978), and citing *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 246 (3d Cir. 1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Macklin v. Spector Freight Sys., Inc.,* 478 F.2d 979, 986–90 (D.C.Cir.1973)).

█ In this case, plaintiffs allege that defendant by its policies engaged in a continuing pattern and practice of discrimination. Therefore, those persons who challenge policies of defendant which continued to affect them as of 300 days prior to the first filing of a complaint with the EEOC are members of the class. Thus, those individuals who terminated their employment with Sumitomo prior to the 300-day cutoff may not join the class. *See McKenzie v. Sawyer,* 684 F.2d 62, 72 n. 8 (D.C.Cir. 1982); *Gill,* 79 F.R.D. at 331; *Newsday, Inc.,* 76 F.R.D. at 15–16.

There is no satisfactory evidence in the record as to when the first charge was filed with the EEOC in *Avagliano.* Similarly, there is no evidence in the record as to when the charge in *Incherchera* was filed with the EEOC. The parties are hereby ordered to submit to the Court, within forty-five days, papers identifying the first filing date in *Avagliano,* and the filing date in *Incherchera.*

█ The class in *Avagliano* will consist of all past and present female employees of Sumitomo whose employment did not terminate more than 300 days prior to the first filing date. The Title VII class in *Incherchera* will consist of all past and present female employees of Sumitomo whose employment did not terminate more than 300 days prior to the date of filing.

### (ii) § 1981 Claims

█ The statute of limitations applicable to actions under § 1981 is the limitation period applicable to analogous actions under state law. *See Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975); *see also Burnett v. Grattan,* —— U.S. ——, ——, 104 S.Ct. 2924, 2928, 82 L.Ed.2d 36 (1984). Since, however, the parties have nowhere addressed the issue, the Court will accept memoranda within forty-five days of this opinion on the question of what statute of limitations should apply to the § 1981 class in *Incherchera.*

### Geographical Scope

█ Plaintiffs seek certification of a nationwide class on the ground that the personnel policies and practices challenged in this action are by and large common to all the defendant's United States offices, and that Sumitomo's branches are essentially unified with respect to the employment practices at issue. On the record to date, the Court finds that a nationwide class should be certified with the express proviso that this determination is, like all aspects of the class certification order, subject to subsequent modification or decertification as appropriate. *See* Rule 23(c)(1); *see also Karan v. Nabisco, Inc.,* 78 F.R.D. 388, 407 (W.D.Pa.1978).

Courts have certified classes including employees of more than one location or division of a company where it has been

found (1) that a single policy prevails in several or all of defendant's subdivisions, or (2) that the subdivisions are not autonomous, or (3) where there are specific allegations pertaining to more than one location. *See Kilgo v. Bowman Transp.*, 570 F.Supp. 1509, 1512–13 (N.D.Ga.1983) (class certified includes employees in multiple locations); *Eirhart v. Libbey-Owens-Ford Co.*, 89 F.R.D. 424, 428–29 (N.D.Ill.1981) (same); *Harriss v. Pan American World Airways*, 74 F.R.D. 24, 47 (N.D.Cal.1977) (same); *Thornberry v. Delta Air Lines*, 30 F.E.P. 520, 524 (N.D.Cal.1978) (same); *Spiess v. C. Itoh & Co.*, Civ. No. 75–H–267, slip op. at 5–6 (S.D.Tex. Sept. 2, 1977) (same); *Ste. Marie v. Eastern R.R. Ass'n*, 72 F.R.D. 443, 448 (S.D.N.Y.1976) (same); *Piva v. Xerox Corp.*, 70 F.R.D. 378, 388 (N.D.Cal. 1975), *aff'd*, 654 F.2d 591 (9th Cir.1981) (same); *cf. Stastny v. Southern Bell Tel. & Tel.*, 628 F.2d 267, 278–80 (4th Cir.1980) (class certified is limited to a single location); *Doninger v. Pacific Northwest Bell*, 564 F.2d 1304, 1311 (9th Cir.1977) (same); *Ladele v. Consolidated Rail Corp.*, 95 F.R.D. 198, 203 (E.D.Pa.1982) (same); *Seidel v. General Motors Acceptance Corp.*, 93 F.R.D. 122, 125 (W.D.Wash.1981) (same); *Gramby v. Westinghouse Elec. Corp.*, 84 F.R.D. 655, 659–60 (E.D.Pa.1979) (same); *Richardson v. Coopers & Lybrand*, 82 F.R.D. 335, 338 (D.D.C.1978) (same).

Although in this case named plaintiffs' employment experience with Sumitomo has been confined to its New York offices, and although plaintiffs do not present specific facts regarding the effects of the challenged policies in offices outside of New York, the Court is persuaded that a nationwide class is most appropriate at this juncture. With regard to the three criteria set out above on which the propriety of a nationwide class is to be evaluated, plaintiffs have made an ample showing as to two.

First, there is substantial indication in the record that, to the extent that the challenged policy exists at all, it exists in each of Sumitomo's offices. Defendant does not contend otherwise. Indeed, at least with respect to the assignment of employees from Japan, defendant nowhere argues that the policy is not equally applicable to all of its offices in the United States. In supplemental interrogatory answers filed in January 1983, defendant responded to the question, "Does the Corporation utilize any selection criteria by which it determines, or which aids in the determination of whom it will hire for jobs, or promote?" with the following broad statement: "To the extent plaintiffs maintain that, during the period from December 1, 1974, until December 1, 1977, they were excluded from positions filled by Japanese nationals, the determination of who would be employed in [executive, managerial and/or sales] positions was made by [Sumitomo's] parent ... in Japan, pursuant to the 1953 Treaty of Friendship, Commerce and Navigation between the United States and Japan." Defendant's Supplemental Answers, no. 13, at 1–2 (quoted in pertinent part).

As for the second factor which the courts have considered in determining proper class scope—the autonomy of branch offices—Sumitomo's practice of rotating employees from Japan into United States offices suggests that Sumitomo's offices lack autonomy in respects which are critical to this case. Perhaps most significant, Sumitomo's personnel practices with respect to employees in managerial, supervisory and executive positions appear to be centrally controlled. In its interrogatory answers, Sumitomo stated that "[e]ach branch office, except the office at 350 Fifth Avenue, New York, New York has autonomous control over salary, hiring, promotion, testing, transfer and requirements for job titles of certain employees including secretaries, clerks, office business machine operators, maintenance personnel, guards, chauffeurs, messengers, receptionists, telex machine operators, etc." Defendant's Answers, no. 4(b), at 3. All of the job titles which according to the defendant are locally controlled are job titles which fall within the "Others" category. *See* discussion, *supra*. Thus, defendant does not seem to argue that local autonomy exists as to "Executive" or "Managerial and Supervisory"

titles. Further, the only title in the "Others" category which defendant does not specifically identify as being within local control is the salesperson title. There is additional evidence that the branches lack autonomy. Sumitomo maintains a company-wide manual regarding the conduct of personnel, and a set of company-wide administrative rules setting out the functions of various divisions, the organizational structure and the responsibilities of the managerial staff. *See* Exhs. LL, MM, NN to Steel Aff.; *see also* Exh. OO to Steel Aff. Although plaintiffs have made no showing in satisfaction of the third criterion used to determine whether a nationwide class is appropriate—that is, they have made no showing of specific allegations of discrimination in locations other than New York—the Court finds this fact to be of little significance at this juncture given that plaintiffs have made such a strong showing as to the other two factors.

Thus, the proposed class which the Court will proceed to consider under Rule 23's requirements is a nationwide class consisting of all past and present female employees of Sumitomo who meet the applicable statutes of limitation.

*Numerosity*

■ The proposed class as limited by the Court clearly satisfies the numerosity requirement of Rule 23(a)(1). Defendant has stated that from December 1, 1974 through December 31, 1982, it employed 354 women in its New York offices. During the same time period, Sumitomo estimates that it employed another 530 women in its other offices in the United States. Letter to Lewis M. Steel, Esq. from Robert D. Piliero (July 14, 1983), Exh. JJ to Steel Aff. Thus, nationwide, there were between 800 and 900 women who worked at Sumitomo from 1975 through 1982. During the years 1976 through 1982, the number of female employees working in the New York offices as of March of each year varied from a low 81 to a high of 98, while the number working outside New York ranged from 97 to 142. Enclosure to Letter to Hon. Harold J. Raby from Robert D.

Piliero (June 20, 1983), Exh. KK to Steel Aff.

■ There is no question that each class as now defined, which may comprise more than 800 members, satisfies the requirement that joinder be impracticable. *See Lloyd v. Industrial Bio-Test Laboratories, Inc.*, 454 F.Supp. 807, 812 (S.D.N.Y. 1978). Indeed, courts have regularly certified classes consisting of far fewer members. *See Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir.1972) (212 members; noting 70 members would suffice); *Sharon Steel Corp. v. Chase Manhattan Bank*, 88 F.R.D. 38, 44 (S.D.N.Y.1980) (87 members); *Klamberg v. Roth*, 473 F.Supp. 544, 558 (S.D.N.Y.1979) (70 members). Furthermore, the geographical spread of class members, which is very great in this case, is to be given considerable weight in determining whether joinder is impracticable. *See Ewh v. Monarch Wine Co.*, 73 F.R.D. 131, 133 (E.D.N.Y.1977).

*Commonality and Typicality*

■ Plaintiffs have satisfied both the commonality and the typicality requirements of Rule 23(a)(2) and (a)(3). In *Falcon*, the Supreme Court noted that

> [t]he commonality and typicality requirements ... tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.

457 U.S. at 157 n. 13, 102 S.Ct. at 2371 n. 13.

Rule 23(a)(2) requires that there be questions of law or fact common to the class. Here, plaintiffs have made a strong showing in satisfaction of this prerequisite. Of course, it has always been the rule that the claims of class members need not be identical in order for class certification to be appropriate. *See* 2 Larson § 49.52(c), at 9B-126 to -127. Furthermore, a broad class may be appropriate where a pattern

of discrimination is challenged. *See McKenzie v. Sawyer*, 684 F.2d at 73–74 ("This is ... a case in which those seeking advancement to journeyman and those seeking promotions beyond the journeyman level were properly certified as members of the same class, for it is a case of similar employment practices, applied to related employment decisions.") *Id.* at 74 (citing *Falcon*, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)); *see also Ste. Marie v. Eastern R.R. Ass'n*, 72 F.R.D. at 448 (broad policy to limit the advancement of women, to pay them less for their efforts than men, or otherwise to discriminate against them is a common question for all women employees of defendant).

Plaintiffs allege the existence of a policy and practice by defendant of preferring Japanese nationals in non-clerical positions, and of failing to employ women in positions above the clerical level. While not admitting to the discriminatory practice alleged, *Sumitomo Shoji America, Inc. v. Avagliano*, 457 U.S. at 179, 102 S.Ct. at 2377, in its brief before the Supreme Court Sumitomo described the contested employment preference in terms which give great support to the argument that there is adequate commonality among class claims. Sumitomo at one point stated succinctly, "Respondents' lack of Japanese nationality (the essential criterion for treaty trader [visa] status) sufficiently explains their exclusion from the hiring preference." Reply Brief for Petitioner and Cross-Respondent, Nos. 80–2070, 81–24, dated Apr. 19, 1982, Exh. D to *Incherchera* Notice of Motion, at 20. Elsewhere, Sumitomo explained at greater length,

> As a factual matter, the basis of the employment preference under attack in this case is Japanese nationality, not place of birth or ancestry. It prefers Japanese nationals, as opposed to the nationals, citizens and subjects of all other countries.... The preference for Japanese nationals in managerial positions is not a practice directed against any particular nationality, and it has nothing to do with anyone's national origin...... Sumitomo's criterion of prefer-

ence—derived directly from its treaty rights as implemented by the [Immigration and Naturalization Act]—is Japanese nationality, not sex.

Brief for Petitioner and Cross-Respondent, Nos. 80–2070, 81–24, dated Jan. 18, 1982, Exh. C to *Incherchera* Notice of Motion, at 17–18 (footnote omitted).

Plaintiffs present further significant proof of a general policy of discrimination. They have shown that in 1975 and 1976, prior to the commencement of this litigation, all those persons listed on defendant's reports to the EEOC ("EEO–1 reports" or "reports") as officials and managers were male. *See* Exh. B to *Incherchera* Notice of Motion, at Exh. 2. In addition, nearly all of the officials and managers were designated as "Oriental." All of the personnel listed as professionals and sales workers were male, and nearly all of them were described as Oriental. Male, Oriental staff members constituted over 40% of Sumitomo's total New York work force. *Id.* In subsequent EEO–1 reports, some women were listed in official and managerial positions. *See* EEO–1 reports for 1977 (one female official or manager), 1981 (eleven female officials and managers), 1982 (ten female officials and managers), Exhs. G, H to Steel Aff. The number of official and managerial positions reported dropped dramatically from thirty-one in the 1976 report to thirteen in the 1977 report, and returned to thirty-one and twenty-eight in the 1981 and 1982 reports, respectively. The number of salespersons dropped from forty-three in the 1976 report to two in the 1977 report, and three in the report for 1982. Plaintiffs note that these numerical changes reflect the fact that those Japanese nationals who enter the United States as treaty traders were not included by Sumitomo in the 1981 and 1982 reports. *See* Reply Memo. at 5 n. 4. Furthermore, one of named plaintiffs has asserted that although some women have received upgraded titles, they continue to perform clerical functions. *See id.* Plaintiffs have made a sufficient showing that all the claims of women presently or previously employed by Sumitomo share

common questions of both law and fact sufficient to warrant the certification of a class including all female employees.

Two cases on which defendant relies in its argument that the commonality and typicality requirements are not satisfied here, *Hawkins v. Fulton County*, 95 F.R.D. 88 (N.D.Ga.1982), and *Nation v. Winn-Dixie Stores*, 95 F.R.D. 82 (N.D.Ga.1982)—the reasoning of which this Court rejects—are in any event not persuasive where, as here, plaintiffs challenge a general policy of discrimination and support the challenge with a showing that such a policy exists.

Two other cases on which defendant places great weight are also inapposite here. In *Warren v. ITT World Communications*, 95 F.R.D. 425 (S.D.N.Y.1982), the court determined that a single plaintiff, who had never applied for a promotion and whose complaint did not demonstrate any general policy of discrimination that would have affected her in the same manner as it would have affected employees who had applied for promotion, could not represent a class of such employees. *Id.* at 428–29. Here, by contrast, a group of plaintiffs of somewhat varied background and experience allege and present evidence that they have all been subject to a general policy and practice of discrimination which affects all women employed at Sumitomo. As the court stated in *Paxton v. Union Nat'l Bank*, 688 F.2d 552 (8th Cir.1982), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345 (1983), where it was held that the trial court improperly denied class certification, "Obviously, the bank's allegedly discriminatory promotion procedures will affect individual employees in different ways because of their diverse qualifications and ambitions. These factual variations are not sufficient to deny class treatment to the claims that have a common thread of discrimination." *Id.* at 561 (citation omitted). The court also stated, "The commonality requirement was satisfied because the following issue pervades all the class members' claims—has [defendant] discriminated against [plaintiff] black employees by denying them promotions and giving them less-er promotions than those given whites similarly situated?" *Id.* (citation omitted).

In *Ladele v. Consolidated Rail Corp.*, 95 F.R.D. 198 (E.D.Pa.1982), the other case on which defendant relies heavily, the court held that a single plaintiff who had been terminated by defendant could not maintain a nationwide class action on behalf of past, present and future employees of defendant since adjudication of his claim would not require consideration of any questions common to the class, and plaintiff presented no evidence of company-wide policies or complaints by other employees, many of whom were unionized, unlike plaintiff, and subject to varied collective bargaining agreements. *Id.* at 202–05. The claims and factual context now before the Court differs in critical respects from those in *Ladele*, just as it differs from those in *Warren*.

Finally, as discussed *supra*, this case, unlike *Ladele*, is an appropriate case for at least initial certification of a nationwide class since plaintiffs have made a showing that there are common practices in all the defendant's offices in the United States, and that these practices emanate from the same source.

Rule 23(a)(3) requires that the claims of the representative parties be typical of the claims of the class. The Court agrees with the eighth circuit that "[t]ypicality is not defeated because of the varied promotional opportunities at issue or the differing qualifications of the plaintiffs and class members." *Paxton*, 688 F.2d at 562; *see also Osmer v. Aerospace Corp.*, 30 F.E.P. 204, 208 (C.D.Cal.1982). Plaintiffs have alleged and made a showing that they and the class of past and present female employees they seek to represent are all subject to a general policy under which Japanese nationals are preferred for managerial and sales positions and women are not promoted beyond clerical positions. This case is unlike the situation at issue in *Calhoun v. Riverside Research Inst.*, 4 E.P.D. ¶ 7825, at 6121 (S.D.N.Y.1972), where plaintiff, a single professional employee who was black, sought to represent a class consisting of all

black employees of the defendant. Without providing any evidence that any other employees, professional or clerical, had complained of racially discriminatory hiring or promotion, plaintiff sought certification of a broad class. Further, plaintiff did not contend that the non-professional employees of defendant would have been qualified for consideration for promotion to the professional job title from which she claimed she had herself been illegally excluded. Read in the light of its facts, *Calhoun* stands for little more than that a unique single plaintiff is not capable of representing a class. *Cf. Meyer v. Macmillan Publishing Co.*, 95 F.R.D. 411, 414 (S.D.N.Y.1982). In the actions now before the Court, plaintiffs do assert and present evidence that they were qualified for promotion beyond the clerical level, and, further, give evidence that their own exclusion from higher-level positions stems from a general policy which affects all other female employees of Sumitomo. It goes without saying that plaintiffs and many, if not all, of the members of the class may be unable to make the showing required for success on the merits, but that is not the issue on this motion. *See generally Speiss v. C. Itoh & Co.*, Civ. No. 75–H–267, slip op. at 10–11 (S.D.Tex. Sept. 2, 1977).

*Adequacy of Representation*

Plaintiffs have also fully satisfied the requirement of Rule 23(a)(4) that the representative parties fairly and adequately protect the interests of the class. In *Falcon*, the Supreme Court observed that the typicality and commonality requirements not only merge as between themselves, but "also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." 457 U.S. at 157 n. 13, 102 S.Ct. at 2371 n. 13. Of course, "[t]he class representative need not be the best of all representatives, but one who will pursue a resolution of the controversy in the interests of the class." *Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 101 (S.D.N.Y.1981) (citing cases).

Here, as recited in the previous discussions, plaintiffs have amply satisfied the requirements of commonality and typicality, such that it is clear they are adequate representatives of the class. It is apparent that in this challenge to Sumitomo's employment policies and practices as discriminatory against all women employees, plaintiffs satisfy the requirement that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Rodriguez*, 431 U.S. at 403, 102 S.Ct. at 1896 (quoting *Schlesinger v. Reservists Committee to Stop the War*, 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974), and citing cases). Further, there is no evidence whatsoever of potential conflicts of interest as between the representatives and the members of the class. Finally, plaintiffs' counsel have provided documentation testifying to their experience and there has been no dispute regarding their capacity to litigate on behalf of the proposed classes. The Court finds no reason for concern that plaintiffs' counsel will not adequately represent the interests of all class members, insofar as the interests of the members have come to light as of this date.

*Rule 23(b)*

Plaintiff seeks to have these classes certified under Rule 23(b)(2), and the Court agrees that this is the appropriate subdivision under which to proceed. Rule 23(b)(2) is applicable where

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole ....

Basic to the claims in these cases are the allegations that the defendant has limited the employment opportunities of the class and has done so on grounds which are generally applicable to all class members. Such allegations suggest that final injunctive relief may be appropriate with respect to the class as a whole.

**584**

Title VII and § 1981 classes are frequently certified under this provision. *See Wetzel .v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 250–51 (3d Cir.1975), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *see, e.g., Vulcan Soc'y v. Fire Dep't*, 82 F.R.D. 379, 402 (S.D.N.Y.1979); *Gill v. Monroe County Dep't of Social Services*, 79 F.R.D. at 329. The demand for money damages in these actions need not defeat the request to proceed under section (b)(2). *See id.* at 330; *Lynch v. Sperry Rand Corp.*, 62 F.R.D. 78, 85 & n. 7 (S.D.N.Y.1973) (collecting cases); 2 Larson § 49.53(b), at 9B–166.8. Since defendant does not oppose plaintiffs' request for certification under this provision, the classes in these actions will proceed under Rule 23(b)(2).

*Notice*

The Court may in its discretion order individual notice of the certification of a class action under Rule 23(b)(2). *See* Rule 23(d)(2); *see Vulcan Soc'y*, 82 F.R.D. at 402; *Marcera v. Chinlund*, 91 F.R.D. 579, 585 (W.D.N.Y.1981); *Newsday, Inc.*, 76 F.R.D. at 16; *see also Canadian St. Regis Band of Mohawk Indians v. New York*, 97 F.R.D. 453, 461–62 (N.D.N.Y. 1983) (class action under Rule 23(b)(1)). Under certain circumstances, however, it is preferable to forego such notification before liability is determined. This may be particularly true where, as here, the class certification is of a somewhat preliminary nature. *See Vulcan Soc'y*, 82 F.R.D. at 402. Therefore, since neither of the parties has yet addressed this issue, the Court now requests that within 45 days of this opinion briefs be submitted on the propriety of providing individual notification to members of the class certified herein.

*Conclusion*

Within forty-five days of the date of this opinion, the parties must submit memoranda to the Court regarding the dates of first filing with the EEOC in each of these actions, the proper statute of limitations to be applied to the § 1981 class in *Incherchera,*

and the question of whether notice should be provided to class members prior to the resolution of the issue of liability.

In both of the actions before the Court, a Title VII class is hereby certified. In *Incherchera*, a § 1981 class is also certified. Each of the classes will be nationwide in scope and will consist of all past and present female employees of Sumitomo, except as limited by the applicable statutes of limitations.

So ordered.