**MEMBERS OF the BRIDGEPORT HOUSING AUTHORITY POLICE FORCE et al.**

v.

**CITY OF BRIDGEPORT et al.**

**Civ. No. B–77–130.**

United States District Court,
D. Connecticut.

June 11, 1980.

David N. Rosen, Rosen & Dolan, New Haven, Conn., for plaintiffs.

Michael P. Koskoff, Beverly J. Hodgson, Koskoff, Koskoff & Bieder, Bridgeport, Conn., for intervening plaintiffs.

W. Paul Flynn, Gerald A. Heffernan, Kopkind, Flynn & Raccio, New Haven, Conn., for intervening defendants, Gregory Iacovetti, William Gombar, Eugene P. O'Neil, Ward N. Colbree, William Giblin, Robert Fitzgerald, James Remele, Philip Napolitano, Robert Biroscak, Richard Petitte, Cornelius Carrol, Robert Mencel, Arnold Briglia and Leo Krunuski.

Jack Samowitz, Thomas W. Bucci, Bridgeport, Conn., for defendants City of Bridgeport, John Mandanice, Joseph Walsh, Members of Bd. of Police Com'rs and Civil Service Comn.

Mark F. Gross, Bridgeport, Conn., pro se and for defendants Leonard N. Mainiero, Henry Lugo, Jr., Clarence T. Williams, Ralph A. Rainieri, and Donald Haywood.

Joseph A. Siciliano, Stratford, Conn., for defendants The Housing Authority of the City of Bridgeport, and Com'rs and Exec. Dir. of Housing Authority.

William B. Barnes, J. Daniel Sagarin, Harrigan, Hurwitz, Sagarin & Rutkin, Mil-

ford, Conn., for intervening defendant Local 1199.

Richard Blumenthal, U.S. Atty., Cheryl B. Wattley, Asst. U.S. Atty., New Haven, Conn., Alice. Daniel, Acting Asst. Atty. Gen., Paul Blankenstein, F. James Foley, Attys., Dept. of Justice, Washington, D.C., for Dept. of Labor, Ray Marshall, Dept. of H.U.D. and Jay Janice, Acting Secretary, H.U.D.

## SUPERSEDING MEMORANDUM OF DECISION AND REMEDY ORDER

DALY, District Judge.

Plaintiffs have moved for clarification and modification of the Court's remedy order of June 2, 1980. The motion is GRANTED, and the Court accordingly issues this superseding memorandum of decision and remedy order, incorporating herein the clarifications plaintiffs have requested, to the extent they are appropriate.

This Court has found the defendant City of Bridgeport liable to plaintiffs for intentional discrimination in the terms and conditions of plaintiffs' employment under Title VII, 42 U.S.C. §§ 1981 and 1983, The Model Cities Act and CETA; the Court also found the defendant Bridgeport Housing Authority liable to plaintiffs under the Model Cities Act for its failure to attempt to effect compliance with the Act.[1] The

City has discriminated against plaintiffs, who do the same work as Bridgeport Police Department officers, by denying them pay, status, promotional opportunities, fringe and pension benefits, and discipline and discharge rights equal to those enjoyed by Police Department officers.

The purpose of a remedy under Title VII[2] is to make whole the victims of unlawful discrimination, *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975), and to put them in their "rightful place," *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 768, 96 S.Ct. 1251, 1266, 47 L.Ed.2d 444 (1976), that is the position they would have held absent the defendant's discriminatory practices. That position in this case is one of parity with the Police Department officers in the terms enumerated above. The question presently before the Court, then, is how best to accomplish this statutory objective in the circumstances of this case.

Plaintiffs have suggested two alternatives and acknowledged the Court's discretion to allow the defendants to choose between them. The first alternative would be to incorporate the plaintiffs into the Bridgeport Police Department. The second alternative would be to establish a housing authority police force pursuant to Conn. Gen.Stat. § 8–44b.[3] Although the latter

---

1. The Court assumes familiarity with the matters discussed in the opinion on liability filed in this case on January 29, 1980, 85 F.R.D. 624 (D.Conn.1980).

2. 42 U.S.C. § 2000e–5(g) provides:

   (g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate. Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission. Interim earn-

ings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable. No order of the court shall require the admission or reinstatement of an individual as a member of a union, or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled, or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex, or national origin or in violation of section 2000e–3(a) of this title.

3. Any housing authority created by section 8 40 shall have the power to establish a housing authority police force, the members of which shall be known as housing authority police officers. Housing authority police officers shall be appointed by the local board,

would be administratively the more complex solution, it is the one the City favors. Partly because of the legal and administrative complexities of such a remedy, and partly because of its deficiencies as equitable relief, this Court would consider any sanction of it a poor exercise of the Court's discretion.

To the extent that the Court's remedy order were fashioned in conformity with the state law, the Housing Police would be subject to two possibly conflicting lines of authority. Because the statute provides that members of a housing authority police force are employees of the housing authority, it presumably contemplates the existence of some of the incidents of the employer-employee relationship between the housing police officers and the housing authority.[4] The statute also provides, however, that housing police are "subject to the ultimate supervision and control of the chief of police in the municipality in which the housing authority operates." Since supervision and control (along with payment of wages) are indicia of an employer-employee relationship for purposes of Title VII analysis, federal law would regard plaintiffs as employees of the City. Thus the City would be obliged to afford the Housing Police terms and conditions of employment equal to those of Police Department officers, but would not necessarily negotiate those terms with the Housing Police. The Housing Authority, on the other hand, although obliged to negotiate with the Housing Police,[5] would be powerless (absent some drastic changes in its financial position and its relationship with the City) to effect any terms it negotiated with its "employees."

■ It is probably true that the City and the Housing Authority could cooperate in a manner that would avoid this and similar problems. And it is certainly clear that this Court could fashion a remedy order that might require them to do so. But the need for imbedding an already sufficiently complicated situation in such a potential administrative morass is not at all apparent. The Court has not only "broad power as a court of equity to remedy the vestiges of past discriminatory practice," *Rios v. Enterprise Ass'n Steamfitters Local 638*, 501 F.2d 622, 629 (2d Cir. 1974), but also "the duty to render a decree which will so far as possible . . . bar like discrimination in the future," *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 2372, 45 L.Ed.2d 280 (1975), *quoting Louisiana v. United States*, 380 U.S. 145, 154, 85 S.Ct. 817, 822, 13 L.Ed.2d 709 (1965). Without continuous court supervision, the kind of administrative complexity described above seems to offer greater opportunities for further discrimination than would a simpler solution.

■ For these reasons, and in light of the fact that the City has not articulated its reasons for preferring this alternative and

agency or person empowered to appoint municipal police officers, subject to approval of the housing authority. The requirements for appointment as a police officer in the municipality in which the housing authority is located, except for age and physical qualifications, shall be mandatory for housing authority police officers in such municipality. No person shall be appointed to such housing authority police force unless he has been awarded a certificate attesting to his successful completion of an approved municipal police basic training program, as provided in section 7-294e. The initial appointment shall be for a probationary term upon completion of which the appointing authority may promote such probationary officers to permanent status; provided such promotion shall be in accordance with procedures applicable to municipal police officers in the municipality and shall be made subject to the approval of the housing authority. Housing authority police officers shall have and exercise the powers and authority conferred upon municipal police officers and shall be subject to the ultimate supervision and control of the chief of police of the municipality in which the housing authority operates.
Conn.Gen.Stat. § 8-44b.

4. *See City of Bridgeport v. Housing Police Local 1303*, Case No. MPP 3081, Dec. No. 1492 (Conn. Bd. of Lab. Rel., Feb. 1, 1977), *appeal dismissed*, No. 115665 (C.P. Jan. 31, 1978).

5. *See* n. 3 *supra* & acc. text.
In addition, the power of the Housing Authority to negotiate with anyone presently is open to question, since it appears that for more than a month now there has been an insufficient number of commissioners of the Housing Authority to constitute a quorum under Conn. Gen. Stat. § 8-41.

none are readily apparent,[6] the Court rejects the Housing Authority Police Force alternative. An order incorporating plaintiffs into the Bridgeport Police Department, on the other hand, would put plaintiffs in their rightful place, the position they would have held absent discrimination, without subjecting all the parties to the administrative complexity and uncertainty of the statutory housing police force alternative. Accordingly, it is this alternative the Court chooses: the City must swear in as members of the Bridgeport Police Department all plaintiffs who are current members of the Housing Authority Police Force.[7]

Members of the Housing Police Force whose police powers have been terminated[8] or who have been terminated for disciplinary reasons[9] need not necessarily be sworn in as members of the Bridgeport Police Department in good standing. However, one of the conditions of plaintiffs'

employment that this Court found discriminatory was their lack of job security. And the City has acknowledged that plaintiffs have not enjoyed the same rights of appeal from termination decisions as Bridgeport Police Department officers. See City's Response to Plaintiffs' Proposed Remedy Order, filed April 11, 1980. In order to remedy this discrimination and provide the plaintiffs with equal protection, the City must provide the five terminated plaintiffs with the same hearings and rights of appeal enjoyed by Bridgeport Police Department officers.[10] Until they have had a full opportunity to exercise these rights, these officers shall have the same rights and duties as a police department officer in their position. If the required proceedings result in a reversal of the termination decisions, these plaintiffs shall then be sworn in as members of the Bridgeport Police Department.

Simply being sworn in as members of the Bridgeport Police Department will not af-

6. The most plausible reason that comes to mind is concern for the safety of the residents of the housing projects. This concern, however, need not enter the Court's deliberations in this context. It is the City's responsibility to provide police protection for the housing projects. This responsibility can be fulfilled equally well whether the officers assigned to the projects are denominated Housing Police or Bridgeport Police Department officers.

The Court does not intend to limit the City's ability to serve the housing projects in any manner. This order does not by any means preclude the establishment of a housing authority unit of the Police Department for which plaintiffs or other police officers may volunteer. Nor does it preclude any other non-discriminatory action the City may wish to take.

7. The following is a list of plaintiffs who are currently members in good standing of the Housing Police Force, with the date of hire for each:

| | |
|---|---|
| Elbert Barnes | 10/07/71 |
| Robert B. Cox | 10/15/73 |
| Juan Crespo | 10/07/71 |
| Frank Davis | 10/07/71 |
| Ulysses A. Davis | 10/15/73 |
| Serafin Garcia | 9/16/64 |
| Hector L. Jimenez | 10/07/71 |
| Ramon Laracuenta | 5/18/70 |
| Edward Lomax | 10/07/71 |
| James Lomax | 1/8/72 |
| William Liggins | 10/15/73 |
| Frank Maldonado | 10/07/71 |

| | |
|---|---|
| Willie C. McBride | 5/18/70 |
| Walter F. McNeil | 10/15/73 |
| Miguel A. Nieves | 2/26/73 |
| Cecilio Ortiz | 9/30/68 |
| Donald Peeler | 10/07/71 |
| Hector Resto | 10/15/73 |
| Pedro Rivera | 10/07/71 |
| Jose M. Rodriguez | 7/26/73 |
| Luis Santana | 7/22/74 |
| Hubert L. Sims | 1/16/63 |
| Eddie W. Tosado | 10/07/71 |
| Pedro Villanueva | 3/26/73 |

8. The following is a list of plaintiffs who have had their police powers terminated by the Board of Police Commissioners, with the date of hire for each.

| | |
|---|---|
| Kenneth E. Farrar | 10/07/71 |
| Nathaniel Ham | 10/15/73 |
| Pedro Hernandez | 10/07/71 |

9. The following is a list of plaintiffs who have been terminated for disciplinary reasons, with the dates of hire and termination, respectively, for each.

| | | |
|---|---|---|
| Reginald Taylor | 10/15/73 | 3/18/77 |
| David Clark | 12/73 | 12/26/75 |

10. It is not clear from the record the extent to which these requirements may already have been satisfied. The Court does not mean to require duplicative proceedings, however, but only the same process afforded suspended or terminated Police Department officers.

ford plaintiffs the full remedy to which they are entitled under Title VII and 42 U.S.C. §§ 1981 and 1983. Backpay is "the rule rather than the exception under Title VII," *EEOC v. Local 638*, 532 F.2d 821, 832 (2d Cir. 1976). The availability of this remedy does not limit the remedy available under § 1981, *Johnson v. Railway Express Agency*, 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975), which encompasses both legal and equitable relief, including backpay, *id.*

■ The City contends that plaintiffs' claims for backpay are barred by laches. This Court has held, albeit without specific reference to any particular element of remedy, that defendants' claim of laches is without merit. The City has shown no reason to alter that holding at this point. It claims that its budget and tax rate computations have been prejudiced by plaintiffs' alleged delay. Assuming arguendo that there has been any delay, it is difficult to see that any prejudice has resulted from it. Any financial difficulties of the City following this lawsuit stem not from the plaintiffs' action or inaction, but from the City's failure to recognize earlier its obligations to the plaintiffs. Accordingly, plaintiffs are entitled to backpay.

■ As to the time period the backpay award should cover, the City seems to be in substantial agreement with the plaintiffs. Title VII limits awards of backpay to a period not exceeding two years before filing of the charge with the EEOC. 42 U.S.C. § 2000e–5(g). Since plaintiffs filed their charge in this case on August 18, 1976, they should receive backpay from August 18, 1974. But such equitable relief is available also under §§ 1981 and 1983, *see, e. g.,*

*Johnson v. Railway Express Agency, supra,* and the statute of limitations under those statutes is three years, *Williams v. Walsh,* 558 F.2d 667 (2d Cir. 1977). The operative date therefore is April 26, 1974, three years before plaintiffs filed their complaint in this case with the Court.[11] And since the discrimination in this case clearly has been continuing since well before the statutory cut-off dates for backpay, a more recent cut-off would be inappropriate.

The City urges that the Court should not award backpay because each plaintiff has not proved both entitlement to and amount of backpay. As to entitlement, plaintiffs are or were members of the Housing Police Force. As such the Court has held them to be victims of employment discrimination remediable under Title VII and 42 U.S.C. §§ 1981 and 1983; the City therefore must pay them backpay. This conclusion applies most clearly to plaintiffs who are presently Housing Police. Each such plaintiff shall receive backpay from April 26, 1974 or his date of hire, whichever is later.

As to those plaintiffs who have resigned since that date, plaintiffs claim entitlement to full relief, for periods both before and after their resignations. Under *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 364–67, 97 S.Ct. 1843, 1869–70, 52 L.Ed.2d 396 (1977), if an employee would have acted in a certain way but for discrimination, he is entitled to benefits he would have received had he so acted. However, there is no evidence before the Court tending to suggest that any Housing Police resignations resulted from discriminatory treatment. Consequently, a plaintiff who has resigned from the Housing Police Force[12] is entitled to backpay only from

---

11. The City agrees to this limit only "assuming that the Court is correct in [having found] intentional discrimination." The necessity of this finding as a basis for equitable relief is open to question after *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). But in any event, this Court has found intentional discrimination and bad faith on the City's part, and that finding clearly supports an order providing relief under §§ 1981 and 1983. *Johnson v. Railway Express Agency, supra.*

12. The following is a list of plaintiffs who have resigned from the Housing Police Force, with dates of hire and resignation, respectively, for each:

| | | |
|---|---|---|
| George Alcover | 10/01/71 | 9/19/79 |
| Remijio Alvarez | 12/71 | 6/07/76 |
| Peter Aranjo | 10/15/73 | 6/14/79 |
| Antonio Brown | 10/01/71 | 12/18/78 |
| Antonio Bargos | 10/26/71 | 6/19/77 |
| Preston Caviness | 9/03/74 | 1/22/80 |
| Pedro Cosme | 2/26/74 | 9/29/79 |

April 26, 1974 or his date of hire, whichever is later, to the date of resignation. *Cf. Mitchell v. Trustees of Pickens Cty. Sch. Dist. A,* 415 F.Supp. 512, 519 (D.S.C.1976) (where school district violated Title VII by refusing to rehire plaintiff because of plaintiff's pregnancy, plaintiff entitled to backpay from effective date of refusal to date she would have resigned or taken leave).

As to the plaintiffs who were terminated, their entitlement to backpay depends on the results of their opportunity to exercise the rights of Police Department officers regarding termination decisions. Each of the plaintiffs who was terminated is entitled to backpay from April 26, 1974 or his date of hire, whichever is later, to the date of his termination. Any officer who is reinstated under the terms of this order [13] shall receive also a further award of backpay determined as if he had been a Police Department officer on the date he was terminated.

For the purposes of this order backpay shall include the sum value of all regular and overtime wages, fringe benefits, pension benefits, and all other benefits to which Bridgeport Police Department officers are or were entitled under union contracts, including all increments, together with interest at 6% per annum and front pay from the date of this order to the date plaintiffs are sworn in as members of the Bridgeport Police Department.[14] Backpay so computed shall be reduced by the sum of amounts earned or earnable with reasonable diligence, together with amounts of any welfare or unemployment compensation received, if any. To the extent that plaintiffs receive retroactive seniority and pension benefits, they shall not receive the cash value of these benefits, as backpay. Plaintiffs shall submit to the Court within 60 days the data necessary to make the above computation of backpay. In making the above calculations the Court will compare with plaintiffs' compensation the compensation of those Police Department officers whose seniority is most nearly equal to the plaintiffs'. Set-offs from backpay shall not include amounts plaintiffs earned at part-time jobs held concurrently with a position on the Housing Police Force, if a Housing Police Officer would have been able to hold that part-time job had he been a Police Department officer. *See e. g., Laugesen v. Anaconda Co.,* 510 F.2d 307, 317–18 (6th Cir. 1975).

With regard to seniority rights, the discrimination against plaintiffs did not begin until 1972. The Housing Police began operation late in the Spring of 1970. CDA Letter 11 then gave the City two years to incorporate plaintiffs into its regular civil service system. *See* Memorandum of Decision filed January 29, 1980, at 42, 85 F.R.D. 624 (D.Conn.1980). The City charter (PX 49) provides that at the end of the two year period plaintiffs would be on probation for six months. The earliest date to which seniority should be retroactive, therefore, is the Fall of 1972.

■ Whether plaintiffs should receive seniority retroactive to that date, or at all, is governed by § 703(h) of Title VII, 42 U.S.C. § 2000e–2(h). This provision protects "the routine application of a bona fide seniority system" *Teamsters, supra,* 431 U.S. at 352, 97 S.Ct. at 1863.

Although a seniority system tends to perpetuate the effects of pre-Act discrimination . . ., the congressional judgment was that Title VII should not outlaw the use of existing seniority lists and thereby destroy or water down the vested seniority rights of employees simply be-

| Angel Duran | 8/18/71 | 10/22/76 |
| Anthony J. Gomez | 3/26/73 | 3/31/78 |
| Ramos Ladisloa | 5/18/70 | 6/01/76 |
| Petro Marrero | 5/18/70 | 10/27/76 |
| James A. Mitchell | 10/07/71 | 11/15/76 |
| Douglas Quarrels | 3/26/73 | 7/24/79 |
| Nathaniel Santiago | 3/26/73 | 2/21/80 |
| Bruce Simons | 10/15/73 | 7/24/77 |
| Richard Silva | 10/07/71 | 3/17/75 |
| James Smith | 9/09/67 | 8/16/74 |

13. *See* nn. 8–10 & acc. text *supra.*

14. In the case of plaintiffs presently suspended or terminated, *see* nn. 8–10 & acc. text *supra,* the backpay period shall extend to the date of termination. Any such plaintiff who is reinstated shall receive the further award stated above. *See* text acc. n. 13 *supra.*

cause their employer had engaged in discrimination prior to the Act. *Id.* at 352–53, 97 S.Ct. at 1863. As noted above, the discrimination in this case occurred after the effective date of the Act, and also after March 1972, the effective date of the amendments making the Act applicable to municipalities. As such, it is subject to remedy by an award of retroactive seniority and such remedy is not barred by § 703(h). *Franks v. Bowman Transp. Co., supra,* 424 U.S. at 757, 96 S.Ct. at 1260 *et seq.*

> Adequate relief may well be denied in the absence of a seniority remedy slotting the victim in that position in the seniority system that would have been his had he been hired at the time of his application. It can hardly be questioned that *ordinarily such relief will be necessary* to achieve the "make-whole" purposes of the Act.

*Id.* at 764–66, 96 S.Ct. at 1264 (emphasis added). The reference in the above quotation to "hiring" should apply with equal or greater force to the process of lateral assimilation into the City's civil service system with the concomitant increase in benefits to which this Court has found plaintiffs were entitled in the Fall of 1972. Thus even assuming the seniority system of the Police Department were in other respects unobjectionable, its existence concurrent with the discriminatory terms and conditions of plaintiffs' employment vitiates any claim it might have to be considered bona fide. For these reasons, and absent any persuasive counter-arguments from any of the defendants, each plaintiff who is currently a member of the Housing Police in good standing shall receive full seniority retroactive to January 1, 1973,[15] or his date of hire, whichever is later. The seniority rights of plaintiffs who have been terminated or threatened with termination will depend, as in the case with backpay, on the results of their opportunity to exercise their rights with respect to termination decisions.[16] Plaintiffs who resigned upon appointment to the Bridgeport Police Department shall receive full seniority retroactive to January 1, 1973, or their respective dates of hire, whichever is later. As to the other plaintiffs who resigned, the question of seniority is moot.

■ The final matter plaintiffs would have the Court address is their entitlement to costs and attorneys' fees. 42 U.S.C. §§ 1988 and 2000e–5(g) clearly guarantee fees and costs to plaintiffs who have prevailed, as have plaintiffs here. *Northcross v. Memphis Bd. of Ed.,* 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973); *Newman v. Piggie Park Enterprises,* 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). Plaintiffs thus are entitled to costs and reasonable attorneys' fees, to be paid by the City in an amount to be determined at a later date.

Judgment shall enter on the matters enumerated herein. The Court reserves judgment on the matter of the 1980 Police Department Sergeants' examination. *See* Fed.R.Civ.P. 54(b).

---

**15.** The choice of this date appears preferable to any attempt to pinpoint the actual date in the Fall of 1972 when plaintiffs' entitlement to equal treatment with the Police Department accrued.

