**Mary SELZER and Ann Juliano Jawin, Plaintiffs,**

v.

**The BOARD OF EDUCATION OF the CITY OF NEW YORK, Frank J. Macchiarola, as Chancellor of the Board of Education of the City of New York, and Nathan Quinones, as Executive Director of the Division of High Schools of the Board of Education of the City of New York, Defendants.**

**No. 82 Civ. 7783.**

United States District Court, S.D. New York.

Dec. 15, 1986.

Hughes Hubbard & Reed, New York City, for plaintiffs; Philip H. Curtis, Theodore V.H. Mayer, Linda Trummer-Napolitano, W. Burlette Carter, of counsel.

Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, New York City, for defendants; Marilyn Richter, Asst. Corp. Counsel, of counsel.

LASKER, District Judge.

After plaintiffs' motion for class certification was granted, the parties were requested to brief three further issues concerning the appropriate definition of the class: (1) Should the class include women allegedly deterred from becoming qualified for the Board of Education positions in question? (2) Should the class include women no longer employed by the Board of Education? and (3) What effect, if any, should the time limitations of 42 U.S.C. § 1983 have on the composition of the class? *See Selzer v. Board of Education,* 112 F.R.D. 176, 183 (S.D.N.Y.1986) (*Selzer I*).

## I.

██ It is determined that women allegedly deterred from becoming qualified for the supervisory and administrative positions in question should not be included in the class, both because plaintiffs have failed to establish the Fed.R.Civ.P. 23(a) commonality and typicality prerequisites for class certification as to this group of women and because inclusion of these women in the class would present manageability problems.

To establish the claim that the Board of Education's allegedly discriminatory policies have deterred female employees from becoming qualified to apply for supervisory or administrative positions, each allegedly deterred woman would have to establish first, that she was aware of the Board of Education's alleged discrimination and second, that it was that discrimination which substantially caused her not to become qualified for the positions in question. Hence, determination of defendants' liability to the allegedly deterred female employees would necessitate an examination of

each woman's individual actions as well as the defendants' actions towards her. The necessity of making this individual inquiry to each member of this subgroup would render inclusion of these women in the class both uneconomical and burdensome, and would demonstrate that the commonality and typicality requirements have not been met. *See General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982) (Commonality and typicality requirements of Rule 23(a) "serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical...."). Here, where a class with thousands of members has already been approved in an action which will involve the resolution of complicated legal and factual issues, it would be inappropriate and unmanageable to complicate matters further by including in the class an indeterminate category of female employees with respect to each of whom individual inquiries would have to be made.[1]

## II.

Plaintiffs state that the class should include those former employees who were employed by the Board of Education on or after November 23, 1979.[2] Defendants do not dispute that some former employees may be included in the class, but argue that plaintiffs' Title VII claims and their § 1983 claims should have different cut-off dates for former employees because the two statutes have different limitations periods. Defendants argue that the appropriate cut-off dates for former employees should be November 3, 1981 for the Title VII claims and November 23, 1981 for the

1. Defendants have also argued that the existence of such a group of deterred women is speculative. Since it is determined that such a group, if it did exist, would not meet the Rule 23 prerequisites, it is not necessary to reach this argument.

2. *See* Plaintiffs' Memorandum at 2 n. 1. November 23, 1979 is the beginning of the limitations period for plaintiffs' § 1983 claims. *See*

discussion at II.B. *infra.* Plaintiffs also state that "A class of female former employees employed by the Board on or after November 23, 1979 is broad enough to encompass the claims of former employees under Title VII," Plaintiffs' Memorandum at 2 n. 1., without discussing the more pertinent issue of whether or not such a class would be *too* broad for some of the former employees' Title VII claims.

§ 1983 claims. I conclude that the Title VII and § 1983 claims must be considered separately to determine the appropriate cut-off date for former employees under each, although I reach different conclusions than defendants as to the appropriate cut-off dates.

### A.

### Title VII Claims

■ While Ms. Selzer and Ms. Jawin may assert Title VII class claims on behalf of members who have not themselves filed charges with the EEOC, as required by Title VII, they cannot represent any female employee who, at the time they filed their charges, could not herself have filed a timely charge with the EEOC. *See Payne v. Travenol Laboratories*, 673 F.2d 798, 813–814 (5th Cir.), *cert. denied*, 459 U.S. 1038, 103 S.Ct. 451, 452, 74 L.Ed.2d 605 (1982); *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 246 (3d Cir.), *cert. denied*, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Avagliano v. Sumitomo Shoji America, Inc.*, 103 F.R.D. 562, 577 (S.D.N.Y.1984); *Sobel v. Yeshiva University*, 477 F.Supp. 1161, 1170 (S.D.N.Y.1979).

■ In New York, a so-called "deferral" state which has established its own fair employment state agency to investigate charges of discrimination, a Title VII claimant must file administrative charges with the EEOC no later than 300 days after the

date on which the act complained of took place, 42 U.S.C. § 2000e–5(e); *Mohasco Corp. v. Silver*, 447 U.S. 807, 810, 100 S.Ct. 2486, 2489, 65 L.Ed.2d 532 (1980); *Shockley v. Vermont State College*, 793 F.2d 478, 481 (2d Cir.1986), or in the case of a continuously maintained employment policy, no later than 300 days after the last occurrence of an instance of that policy, *see Acha v. Beame*, 570 F.2d 57, 65 (2d Cir. 1978). However, in a deferral state a discrimination charge is not deemed officially filed with the EEOC until sixty days after the EEOC receives it.[3] Hence, in a deferral state, in order for the claimant's charge to be timely it must be received by the EEOC no later than 240 days after the date on which the act complained of took place, or the date on which the last occurrence of a continuing violation took place. *See Mohasco*, 447 U.S. at 814 n. 16, 100 S.Ct. at 2491 n. 16 ("a complainant in a deferral State ... need only file his charge within 240 days of the alleged discriminatory employment practice in order to insure that his federal rights will be preserved"); *Isaac*, 769 F.2d at 819; *Rodriguez v. Chandler*, 641 F.Supp. 1292, 1295 & n. 5 (S.D.N.Y.1986) (Weinfeld, J.).

■ In this case, where Ms. Selzer's and Ms. Jawin's Title VII charges were submitted to the EEOC on April 21, 1981, Amended Complaint, Exhibit A, the charges were not deemed officially filed until sixty days[4] after that date.[5] Since

---

3. In a deferral state a discrimination charge is not deemed officially filed with the EEOC until sixty days after charges have been filed with the state fair employment agency or the state terminates its proceedings, whichever comes first. 42 U.S.C. § 2000e–5(c); *Mohasco Corp.*, 447 U.S. at 817, 100 S.Ct. at 2492; *Isaac v. Harvard University*, 769 F.2d 817, 819 (1st Cir.1985); *Goodman v. Heublein, Inc.*, 645 F.2d 127, 132 (2d Cir.1981). To help claimants comply with this deferral requirement, the EEOC will transmit to the state agency any claim which it receives from individuals who do not first file with the state agency, holding the original claim "in suspended animation" until the deferral period is up, at which time the claim is automatically deemed filed with the EEOC. *Love v. Pullman*, 404 U.S. 522, 526, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1972); *Isaac*, 769 F.2d at 819.

4. In this case, there is no evidence to suggest that Ms. Jawin and Ms. Selzer filed claims with the appropriate New York agency before they submitted their claims to the EEOC, or that, upon referral by the EEOC to the state agency, the state initiated and terminated any proceedings earlier than sixty days after the claims were submitted to the EEOC. Hence, sixty days after April 21, 1981 is the earliest date upon which Ms. Selzer's and Ms. Jawin's claims could be deemed filed. *See Rodriguez*, 641 F.Supp. at 1295 n. 5.

5. Defendants argue that the relevant filing date is not April 21, 1981, the date on which Ms. Selzer and Ms. Jawin submitted their original claims to the EEOC, but June 24, 1982, the date on which Ms. Jawin submitted her amended EEOC complaint with classwide allegations.

Ms. Selzer and Ms. Jawin have adequately alleged a violation of Title VII continuing to the present time on the part of defendants, *Selzer I* at 181–82, any woman qualified to be in the class who is currently employed by the Board of Education should be included in the class even if the specific incidents of which she complains took place more than 240 days before April 21, 1981 (i.e., 300 days before the EEOC charges were officially filed). However, *former* Board employees are in a different position than current employees in terms of their eligibility to be included in the class. In the case of a former employee, the last occurrence of the alleged continuing violation which can be applied to her took place the day she left the Board's employ. *See Williams v. Owens-Illinois,* 665 F.2d 918, 924 (9th Cir.) (termination of employment places the victim "out of reach of any further effect of company policy"), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982); *Avagliano,* 103 F.R.D. at 578. Hence, only those former employees of the Board of Education who terminated their employment on or after the 240th day before April 21, 1981, and could therefore have filed a timely claim with the EEOC at the time when the class claim was filed, may be included in the Title VII class claims.

In conclusion, only those former employees of the Board of Education who terminated their employment with the Board on or after the 240th day before April 21, 1981 (and who are otherwise qualified to be members of the class) may be included in the class for the purposes of the Title VII claims.

### B.

### § 1983 Claims

Plaintiffs argue that the limitations period for their § 1983 claims is three years, while defendants argue that the appropri-

ate period is one year. Both parties cite *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), to support their respective positions. I conclude that the three year limitations period applies to the § 1983 claims.

■ The limitations period for § 1983 claims is determined according to state law. The Court of Appeals for this Circuit has long held that in New York § 1983 claims are subject to the three-year limitations period applied under New York state law to actions based on liability created by statute, N.Y.Civ.Prac.Law § 214(2). *See Pauk v. Board of Trustees of City University of New York,* 654 F.2d 856, 861–66 (2d Cir. 1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); *Rodriguez v. Chandler,* 641 F.Supp. at 1296. Defendants contend, however, that the Supreme Court's decision last year in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254, requires the application of the one-year limitations period for intentional torts, N.Y.Civ.Prac.Law § 215(3), to § 1983 claims. In *Wilson,* the Supreme Court held that "§ 1983 claims are best characterized as personal injury actions," 105 S.Ct. at 1949, and that the applicable state statute of limitations should be that applied under state law to personal injury actions. While the Court of Appeals for the Second Circuit has not yet squarely considered the effect of *Wilson* on the statute of limitations to be applied to § 1983 actions governed by New York law, it has indicated in dictum that "the *general* personal injury tort limitations period, which seems to be what is mandated for Section 1983 actions by *Wilson v. Garcia* ... is also three years in New York," *Villante v. Department of Corrections of the City of New York,* 786 F.2d 516, 520 n. 2 (2d Cir.1986) (emphasis in the original) (citation omitted). The vast majority of New York federal district courts have also interpreted *Wilson* as re-

---

However, the opening date for membership in a class for a Title VII claim should be set by reference to the earliest charge filed by a named plaintiff. *Travenol Laboratories,* 673 F.2d at 813. Ms. Selzer's and Ms. Jawin's original

EEOC claims provide the relevant filing date because the class allegations made in their subsequent amended EEOC claims are sufficiently related to the allegations of the earlier claim. *Id.* at n. 19.

quiring the application of the three-year New York personal injury limitations period. *See Rodriguez,* 641 F.Supp. at 1297 & n. 12 and cases cited therein. As Judge Weinfeld explained in *Rodriguez:*

> [District courts in the Second Circuit are] bound by the Second Circuit's consistent refusal to abandon its prior holdings and apply a shorter limitations period to § 1983 claims, the underlying rationale being to effectuate the broad remedial purposes of § 1983.

*Id.* at 1297.

In sum, a three year limitations period is applicable to plaintiffs' § 1983 claims in this case. Since Ms. Selzer and Ms. Jawin filed their federal complaint on November 23, 1982, all former employees of the Board of Education who are otherwise qualified to be members of the class and who left the Board's employ on or after November 23, 1979 may be included in the § 1983 class claims.

### III.

■ There remains the issue of what effect, if any, the limitations period of § 1983, described above, should have on the composition of the class. Defendants argue that only those alleged incidents of discrimination which occurred on or after November 23, 1979 are actionable, and that employees complaining of incidents which occurred prior to that date must be excluded from the § 1983 class claims. Plaintiffs argue that under the "continuing violation" theory, alleged incidents of discrimination predating November 23, 1979 are actionable, since plaintiffs have alleged a violation of § 1983 continuing to this day. Defendants also contend that the different limitations periods for Title VII and § 1983 mandate the creation of two separate

classes or two subclasses. Since plaintiffs have argued for only one limitation period for the whole class, they have not addressed this issue. I conclude that the continuing violation theory is applicable to § 1983 actions, allowing plaintiffs to pursue § 1983 class claims predating November 23, 1979,[6] and that it is appropriate to establish two subclasses.

While the continuing violation theory originated in decisions on employment discrimination actions based on Title VII, *see Velazquez v. Chardon,* 736 F.2d 831, 833 (1st Cir.1984), the theory has also been applied in employment discrimination actions based on other statutes, including (1) § 1983, *see Velazquez v. Chardon,* 736 F.2d at 833; *Perez v. Laredo Junior College,* 706 F.2d 731, 733 (5th Cir.1983) (§ 1983 and § 1981), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 708, 79 L.Ed.2d 172 (1984); *Eldridge v. Bouchard,* 620 F.Supp. 678, 683 (W.D.Va.1985); *Members of Bridgeport Housing Authority Police Force v. City of Bridgeport,* 85 F.R.D. 624, 637 (D.Conn.1980) (§ 1983 and § 1981), (2) § 1981, *see Williams v. Norfolk & Western Railway,* 530 F.2d 539, 541–42 (4th Cir.1975); *Macklin v. Spector Freight Systems, Inc.,* 478 F.2d 979, 994 (D.C.Cir.1973); *Gilliard v. New York Public Library,* 597 F.Supp. 1069, 1078–79 (S.D.N.Y.1984); *Ingram v. Madison Square Garden Center,* 482 F.Supp. 414, 423 (S.D.N.Y.1979), *aff'd as modified,* 709 F.2d 807 (2d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 346, 78 L.Ed.2d 313 (1983), and (3) the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), *see O'Malley v. GTE Service Corp.,* 758 F.2d 818, 821 (2d Cir.1985); *EEOC v. Home Insurance*

---

**6.** While I hold that, under the continuing violation theory, plaintiffs may pursue § 1983 class claims which predate November 23, 1979, the question of how much further back in time the § 1983 class claims may reach is left open. While plaintiffs' Title VII class claims may be pursued no further back than March 24, 1972, the effective date upon which Title VII was expanded to include public employees, *see Selzer I* at n. 3, neither party has suggested that

there is such an automatic cut-off date for plaintiffs' § 1983 class claims. It is noted, however, that if plaintiffs seek to pursue incidents which occurred a very long time ago in an effort to establish a pattern and practice of discrimination, issues of the relevance of these early incidents to the action as a whole and their effect on the manageability of this action will have to be considered.

*Corp.*, 553 F.Supp. 704, 711–13 (S.D.N.Y. 1982).

■ Although no court in the Second Circuit has yet specifically addressed the issue of the applicability of the continuing violation theory to discrimination actions brought under § 1983, no reason has been suggested as to why the theory is not applicable to § 1983 employment discrimination claims for the same reasons it is applied to employment discrimination actions brought under other statutes. Limitations periods for civil rights claims have a dual purpose: to "guarantee[ ] the protection of the civil rights laws to those who promptly assert their rights[ ] ... [and to] protect employers from the burden of defending claims arising from employment decisions that are long past." *Delaware State College v. Ricks*, 449 U.S. 250, 256–257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980). When a continuing violation is alleged, however,

> [c]oncerns as to a defendant's prejudice are absent or diminished: an employer maintaining a company-wide unlawful employment practice is in a less sympathetic position when seeking repose; more significantly, the continued nature of the policy represents its "affirmative perpetuation", and is susceptible to characterization as a conscious waiver of limitations period protection. Moreover, since the employer remains subject to suit by a current employee or by the EEOC, the concern respecting production

of evidence as to past acts is considerably diminished. Simply put, an employer that maintains a continuing violation neither deserves nor obtains repose.

*Equal Employment Opportunity Commission v. Home Insurance Co.*, 553 F.Supp. 704, 713 (S.D.N.Y.1982) (citations omitted) (discussing application of continuing violation theory to ADEA discrimination action). Hence, regardless which civil rights statute governs the suit,[7] where the claim is based not on a single, discrete incident but on an allegedly continuous, ongoing policy, the last act of the defendant logically marks the accrual of the cause of action and the beginning of the limitations period, *see Association Against Discrimination v. City of Bridgeport*, 647 F.2d 256, 274–75 (2d Cir.1981), *cert. denied*, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982).[8]

It follows that the different limitations periods for Title VII and § 1983 require the creation of two subclasses. While all women currently employed by the Board of Education have timely claims both under Title VII and § 1983 since the allegedly discriminatory policy continues in force to the present time, the cut-off date for former employees under Title VII is the 240th day before April 21, 1981, while the cut-off date for former employees under § 1983 is November 23, 1979. Hence, former employees who left the Board's employ on or after November 23, 1979 but before the 240th day before April 21, 1981 may only

**7.** The Second Circuit has suggested in dictum that the federal rule for determining when a particular claim accrues should not vary according to the federal statute under which it is brought. *See Pauk*, 654 F.2d at 860 n. 3 (applying rule for accrual of denial of tenure claim brought under § 1981 to a case involving denial of tenure claim brought under § 1983).

**8.** It is not necessary to decide now whether, as suggested by the defendants, potential money damages for the § 1983 class should be limited by the § 1983 statute of limitations and that issue is reserved for a decision at a later time. It is noted, however, that some courts have taken the approach of finding that § 1981 and § 1983 claims are timely under the continuing violation theory, but then using the appropriate limitations period to restrict the period for

which monetary relief may be collected. *See Members of Bridgeport Housing Authority Police v. City of Bridgeport*, 499 F.Supp. 760, 765 (D.Conn.1980), *aff'd in part and vacated in part on other grounds*, 646 F.2d 55 (2d Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 397, 70 L.Ed.2d 213 (1981); *Ingram v. Madison Square Garden Center*, 482 F.Supp. 918, 926 (S.D.N.Y.1979), *aff'd as modified*, 709 F.2d 807 (2d Cir.) *cert. denied*, 464 U.S. 937, 104 S.Ct. 346, 78 L.Ed.2d 313 (1983); *Allen v. Amalgamated Transit Unit, Local 788*, 415 F.Supp. 662, 666 (E.D.Mo.1976), *aff'd in part and remanded in part on other grounds*, 554 F.2d 876 (8th Cir.), *cert. denied*, 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977). However, the rationale for restricting damages in this way is not explained in these cases and is not immediately clear.

be included in the § 1983 class claims, while all other members of the class may participate in both the Title VII and the § 1983 class claims.

Accordingly, two sub-classes must be created, defined as: (1) a subclass of claimants under both Title VII and § 1983, consisting of all class members who are either currently employed by the Board of Education or who left the Board's employ on or after the 240th day before April 21, 1981, and (2) a subclass of claimants under § 1983 only, consisting of class members who are former employees of the Board of Education who left the Board's employ on or after November 23, 1979 but before the 240th day before April 21, 1981.

Submit proposed certification order on notice.