**Carmen Gloria ROSARIO–OLMEDO, Plaintiff,**

v.

**COMMUNITY SCHOOL BOARD FOR DISTRICT 17, Dorothy Burke, Albert Bloch, Osceola Fletcher, Abraham M. Flint, and Maurice Gumbs, Defendants.**

No. CV–89–1774.

United States District Court, E.D. New York.

Jan. 29, 1991.

Kenneth Kimerling, Puerto Rican Legal Defense & Educ. Fund, Inc., New York City, for plaintiff.

Norma Kerlin, Asst. Corp. Counsel, New York City, for defendants.

MEMORANDUM AND ORDER

GLASSER, District Judge:

Plaintiff, Carmen Olmedo, a hispanic woman, was passed over for the position of assistant principal at P.S. 316, an elementary school in Community School District 17 in Brooklyn, New York in favor of a black woman, Barbara Gibbs. She filed this lawsuit against Community School Board 17 and several of its members alleging dis-

crimination on the basis of race and national origin in violation of the Fourteenth Amendment, the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and the Civil Rights Act of 1871, 42 U.S.C. § 1981 and § 1983. The complaint also sets out a second claim for relief in which she alleges that in 1985 she sought and was denied the position of Coordinator of English as a Second Language and Bilingual Education in Community School District 17. This claim alleges violations of plaintiff's rights under the First and Fourteenth Amendments and under § 1983. Defendants have moved for summary judgment.

*Facts:*

Many of the facts of this case are not in dispute. Plaintiff has taught at P.S. 316 (and its predecessor school P.S. 42) since 1963. In the fall of 1988, she applied for the position of assistant principal. Pursuant to regular procedure, applicants for that position are evaluated by a "Screening Committee" named by the Community School Board ("CSB" or "the Board"). The members of that committee are the community superintendent (non-voting), representatives of the CSB, and representatives of the parent association of the school involved. The screening committee's role is to review resumes and conduct interviews, and to submit the names of one or more candidates to the superintendent. The superintendent then submits one or more of those names to the CSB for final selection. In a non-public executive meeting of the Board, a "readiness vote" is taken by which it is determined whether five members of the nine-member CSB are ready to vote for one candidate at the next public session. The final appointment is then made by a majority vote of the CSB at a public session.

To fill the position of assistant principal at P.S. 316, the superintendent submitted three names to the CSB, in order of preference. They were (1) Carmen Olmedo, (2) Barbara Gibbs, and (3) Edwin Rosario. Olmedo and Rosario are hispanic; Gibbs is black. At the May 17, 1989 non-public meeting, a readiness vote was taken, in which three members voted "ready" to se-

lect Olmedo and five members voted "ready" to select Gibbs. Plaintiff then filed this lawsuit and unsuccessfully sought a preliminary injunction preventing the CSB from voting Gibbs into the position in public session. Following the Magistrate's denial of the injunction for failure to show irreparable harm, and Judge McLaughlin's affirmance of that denial, the CSB on September 27, 1989 voted in public session to appoint Gibbs. Voting for the appointment of Gibbs were CSB members Dorothy Burke, Claudine Corbanese, Abraham Flint, Gina Gill, Maurice Gumbs, Sylvester Leaks, and James Malone. Voting against was Agnes Green. Not present and not voting was Albert Bloch.

*The Title VI Claim*

■ Title VI of the Civil Rights Act of 1984, 42 U.S.C. § 2000d, states:

No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

Section 2000d–3 states:

Nothing contained in this subchapter shall be construed to authorize action under this subchapter by any department or agency with respect to any employment practice of any employer, employment agency, or labor organization *except where a primary objective of the Federal financial assistance is to provide employment.*

(Emphasis added.) As a threshold requirement for an action under these sections, the federal funds allegedly giving rise to the action must have the "primary objective" of providing employment. *See Caufield v. Board of Education of the City of New York,* 632 F.2d 999 (2d Cir.1980). Courts have dismissed complaints for failure to specify when funds were received, what they were used for, and whether their primary objective was to provide employment. For example, in *Richards v. New York State Dept. of Correctional Services,* 572 F.Supp. 1168 (S.D.N.Y.1983), the court dismissed a claim with leave to replead:

Due to the limited facts stated by plaintiffs with regard to their Title VI claims, this Court is unable to determine whether plaintiffs have stated a claim that satisfies this requirement. The amended complaint merely alleges that the defendants have violated Title VI by reason of their use of federal financial assistance in connection with their employment policies and procedures. It is important to note that plaintiffs fail to state that the primary objective of the federal financial assistance received by the Department was to provide employment. Moreover, the plaintiffs have not indicated when and how it used them. Faced with these circumstances, courts have not hesitated to dismiss for failure to state an essential element of the claim. *See Sabol v. Bd. of Educ.,* 510 F.Supp. 892, 896 (D.N. J.1981); *Clark v. Louisa Co. School Bd.,* 472 F.Supp. 321, 323 (E.D.Va.1979).

*Id.* at 1175 (citation omitted). In *Weir v. Broadnax,* 1990 WL 195841, 1990 U.S.Dist. Lexis 15795 (S.D.N.Y.), the court also dismissed a claim under Title VI, with leave to replead, when the complaint did allege that the programs in question received federal funding but failed to "stat[e] explicitly" that that federal funding was primarily targeted at providing employment.

Plaintiff's complaint in this case fails to allege the receipt of federal funds, their use, and whether their primary purpose is employment. In this motion, which is for summary judgment, the court has been presented with matter outside the pleadings, but such matter has not been enlightening on the issue of receipt and purpose of federal funds. Virtually no evidence has been submitted to demonstrate what federal funds are received and used in any connection with defendants' programs or plaintiff's job. The claim is therefore dismissed, with leave to replead in accordance with the above-noted requirements. Defendant's may renew this motion as to this claim provided it is properly pleaded.

*The § 1981 and § 1983 Claims*

The elements of a *prima facie* case and the burdens of production in an employment discrimination claim under § 1981 and § 1983 are well established. They follow the same pattern set out for Title VII claims by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In a claim based on failure to promote, a plaintiff first has the burden of establishing that (1) she was a member of a protected group, (2) she was qualified for the position to which she sought promotion, (3) she was rejected for that position, and (4) the employer continued to offer the position in question to other qualified applicants. Once the plaintiff establishes the elements of the *prima facie* case, an inference of discrimination arises. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). Two items are important to note here. First, the inference of discrimination arises without the production of evidence which would tend to prove directly that discrimination was involved in the employer's decision—the simple fact that a minority candidate was qualified but rejected in favor of another candidate is sufficient to raise it. Second, this burden is not onerous, and courts have not been encouraged to tarry when its essential requirements have been met.

Next, the defendant employer may rebut the inference of discrimination raised by the *prima facie* case. This he may do by coming forward with evidence that a legitimate, nondiscriminatory reason motivated his promotion of another candidate. Should he meet this burden, plaintiff then must prove "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (§ 1981); *Dugan v. Ball State University,* 815 F.2d 1132, 1135–36 (7th Cir.1987) (§ 1983); *Molthan v. Temple University,* 778 F.2d 955, 961 (3d Cir.1985) (§ 1983); *Hardin v. Stynchcomb,* 691 F.2d 1364, 1369 n. 16 (11th Cir.1982) (§ 1983).

The ultimate burden of proof of discrimination rests on the plaintiff. But because the establishment of a *prima facie* case

alone raises an inference of discrimination, that ultimate burden merges with the plaintiff's burden of proving that the employer's proffered reason is pretextual. This plaintiff may accomplish in either of two ways. Plaintiff may persuade the court with direct evidence that a discriminatory reason more likely than the proffered reason motivated the employer's decision. Or, plaintiff may indirectly persuade the court of pretext by showing that the employer's proffered explanation is not worthy of credence. *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. Thus, "[a] showing that a proffered justification is pretextual *is itself sufficient* to support an inference that the employer intentionally discriminated." *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989) (emphasis added). This position has been vigorously embraced by the Second Circuit as following inexorably from the *McDonnell Douglas* system of proof:

> [I]f the plaintiff convinces the trier of fact that it is more likely than not that the employer did not act for its proffered reasons, then the employer's decision remains unexplained and the inferences from the evidence produced by the plaintiff may be sufficient to prove the ultimate fact of discriminatory intent.

*Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1113 (2d Cir.1988), *quoting Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 899 (3d Cir.), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). This position has also been adopted in many other circuits. *See Id.* at 1113–14 and cases cited therein. *But see, Chipollini v. Spencer Gifts, Inc.*, 814 F.2d at 903 (Hunter, J., dissenting) ("An employer's proffered reason for terminating an employee may be pretextual without violating the ADEA or any other civil rights statute. An employer motivated by ill-will, nepotism, or unpublicized financial problems in his termination of an employee is just as likely to use a pretextual explanation for his action as is an employer motivated by statutorily prohibited discrimination."); *Dea v. Look*, 810 F.2d 12, 15 (1st Cir.1987) (simply refuting proffered reasons cannot alone prove pretext for discrimination).

At the summary judgment stage, plaintiff does not have to prove that she was discriminated against. This burden she will bear at trial. For now, she may preclude summary judgment by producing evidence from which the trier of fact could reasonably draw an inference of discrimination. Therefore, she may preclude summary judgment by producing evidence from which a reasonable jury *could* conclude that the legitimate reasons proffered by the employer were pretextual.

In reviewing the evidence submitted with this motion, the court is informed by a recent trilogy of decisions of the United States Supreme Court. Firstly, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), the court stated:

> Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action.... Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rules prior to trial, that the claims and defenses have no factual basis.

In *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986), the Court said:

> When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

In *Childress, A New Era for Summary Judgments: Recent Shifts at the Supreme Court,* 116 F.R.D. 183, 186 (1987), the author, commenting upon that statement in *Matsushita,* writes:

> This language makes clear that summary judgment acts in a parallel fashion to the *trial* motion for a directed verdict, allowing a grant if the nonmovant plaintiff fails on substantive proof even before trial. This strengthens the perception that summary judgment allows weak *factual* claims to be weeded out, not just the facts that have no legal import; "genuine" allows some quantitative determination of sufficiency of the evidence.

And finally, in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Court again emphasized that granting a motion for summary judgment requires that there be no *genuine* issue of *material* fact. "Only disputes over facts that might affect the outcome of the suit under the governing law will preclude the entry of summary judgment.... [S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." 477 U.S. at 248, 106 S.Ct. at 2510. The Court went on to instruct that "[i]f the evidence is merely colorable, ... or is not significantly probative, summary judgment may be granted." 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

 With these principles in mind, I conclude that plaintiff has offered sufficient evidence from which a reasonable jury might conclude that the employer's reasons were pretextual and that summary judgment would therefore be inappropriate. First, plaintiff established a *prima facie* case based on the undisputed facts that she is hispanic, that she was qualified for the job, that her application for that job was rejected, and that a seven-member majority of the CSB selected somebody else for the position.

In rebuttal, the members of the Community School Board offered nondiscriminatory reasons for their selection of Barbara Gibbs over plaintiff. They relied on the fact that her credentials satisfied the steering committee and the superintendent and offered some additional reasons for their choice. Some members of the CSB were new to it, and stated that they simply voted with what they perceived to be the majority. This group included Corbanese, Gill and Malone. *See* Kimmerling Aff., Exhs. 1–3. Malone additionally said in deposition that he voted for Gibbs because her resume "seemed appropriate," that other board members spoke well of her, and that some parents made statements on behalf of her. *Id.,* Exh. 3, at 6–8. Sylvester Leaks testified that he supported Gibbs because he felt that Gibbs would be a stronger administrator and more successful in dealing with the teachers' union "to make the teachers perform and the administrators perform." He stated that he perceived "[s]trength of character; lack of fear to discipline to write-up a teacher." *Id.,* Exh. 5, at 10. In contrast, he felt that plaintiff, who was already a part of the administration of the school, "had not manifested anything, to me, that would make me feel that she would be any different or stronger than the present administration." *Id.* at 11. Maurice Gumbs said in deposition that he voted for Gibbs because "I read her resume. I was satisfied that she had supervisory credentials, and I depended on the evaluation of the superintendent, and the recommendation of the parents, and principal." *Id.,* Exh. 4, at 29. He also said that he voted for Gibbs because she was not currently working in P.S. 316, and that since the school was "not doing well," his philosophy was to resist an appointment from current members of the school's staff. Dorothy Burke testified at the preliminary injunction hearing that she felt Gibbs was better qualified for numerous specific reasons. They included experience in two separate school districts other than District 17; a philosophy of education which included sensitivity to school safety and classroom climate; high expectations for the children; and "innovative ideas," such as establishing a class newspaper, a liaison with the intermediate school the stu-

dents would attend, and peer tutoring. Defendants' 3(g) Statement, Exh. C, at 6–7.

However, to the end of proving pretext, a question of fact as to the existence of which would preclude summary judgment, plaintiff has called into question the sincerity of defendants' proffered reasons. First, she challenges the reason for Leaks' decision. He testified that he based his decision on the tape recordings of the interviews of the candidates. He testified that he "did not read any of the resumes," that he did not recall seeing the recommendation of the superintendent, and that he never had any discussions with any other board member prior to his vote on the appointment. Kimmerling Aff., Exh. 5, at 7–9. When questioned what he heard in the interviews of Olmedo and Gibbs which led him to the conclusion that Gibbs would show more strength in dealing with the teachers' union, he could not recall anything said by either candidate that supported it. *Id.* at 19. When asked whether his belief that plaintiff would not be a strong candidate was based on the taped interview, he said it was not, and that it was simply that plaintiff was part of the current administration of a poor school. *Id.* at 11. But when asked about his expressed "philosophy" not to hire candidates currently working in a school if that school is doing poorly, *Id.* at 13, he admitted that the rule was not absolute because "[t]here may be somebody in that school who has the potential but has not been given an opportunity." He then admitted that he did not know "what opportunities [plaintiff had] had in P.S. 316" because he "rarely visited the school" and "would not know her, what she does...." *Id.* at 17.

Plaintiff points to similar inconsistencies in defendant Gumbs' testimony. While he stated as a reason for selecting Gibbs over plaintiff that "[u]nequivocally" the CSB will not promote "from within" a failing school, and that Gibbs was chosen by the operation of a "fairly mechanical rule, that I personally have," plaintiff offered evidence that he and the CSB have voted to promote from within a failing school on many occasions. Defendants' 3(g) Statement, Exh. C, at 34, 51–54; Exh. B, at

44–45. The court was also informed at oral argument that since the filing of this lawsuit plaintiff has in fact been promoted to the position of assistant principal at P.S. 316, albeit a different assistant principal position than the one she sought and was denied originally.

Defendant Burke testified that she selected Gibbs because, while plaintiff was "a good candidate" with 26 years of teaching experience, that experience "was in one school, whereas Miss Gibbs had 18 years, which is a lot of experience, nine in one district and nine in another district." She also said she favored Gibbs' "philosophy of education." However, it is not clear that plaintiff was ever asked her "philosophy of education;" nor is it clear why the experience of Gibbs' might have been valued over that of plaintiff. Moreover, there is significant evidence in the record indicating that Gibbs' credentials are not superior to those of plaintiff and might in fact be inferior. *See id.,* Exh. B, at 2–14, 93–95.

It is not this court's role in deciding this motion to decide who was the more qualified candidate, nor is it to decide what level of credence ought be accorded defendants' proffered reasons. It is simply to determine whether a rational jury could find that the defendant's reasons are unworthy of credence. In making that determination, the court must consider any inferences raised by the evidence in the light most favorable to the non-moving party. "To defeat a summary judgment motion based only on a defendant's proffer of a nondiscriminatory animus, a plaintiff who has made a *prima facie* showing of discrimination need only point to evidence establishing a reasonable inference that the employer's proffered explanation is unworthy of credence." *Sorba v. Pennsylvania Drilling Co.,* 821 F.2d 200, 205 (3d Cir.1987).

Based on the foregoing, I conclude that there are genuine issues of material fact concerning the legitimacy of defendants' proffered reasons for passing over plaintiff. The evidence submitted demonstrates that a jury could find that those reasons are pretextual and that the individual defendants were motivated by discrimination

which caused the Board as a whole to vote for another candidate. Summary judgment is therefore inappropriate and is denied.

*Plaintiff's Second Claim for Relief*

Plaintiff's second claim, asserted under § 1983 for violation of her First and Fourteenth Amendment rights, is based on events alleged to have occurred in 1985 related to her application for the position of Coordinator of English as a Second Language and Bilingual Education within Community School District 17. In New York, the statute of limitations for § 1983 suits is three years, borrowing from the state personal injury statute. *See Selzer v. Board of Education of the City of New York,* 113 F.R.D. 165 (S.D.N.Y.1986). The present lawsuit having been filed in 1989, that claim is barred by the statute of limitations and is therefore dismissed.

*Conclusion*

Plaintiff's Title VI claim is dismissed with leave to replead, the time to do so expiring 20 days after the date of this order. Defendants may renew this motion as to that claim if such pleadings have been filed. If no amended pleading is filed within that time, that claim shall be deemed abandoned and dismissed with prejudice. Defendants' motion for summary judgment as to the § 1981 and § 1983 claims based on failure to promote to the position of assistant principal is denied. Defendant's motion as to the § 1983 claim based on failure to promote to the position of Coordinator of English as a Second Language and Bilingual Education in 1985 is granted.

SO ORDERED.